## KENNEDY v. ADICKES.

1. ADMINISTRATION BOND—ACTION—SURETIES.—It is in accordance with old
   practice for distributees to call an administrator to account without making
   the sureties on his bond parties to the proceeding, and then sue at law the
   sureties on the administration bond for the amount of their decree against
   the principal; but the modern and approved practice is to implead the
   sureties in the original suit for accounting.
2. IBID.—IBID.—IBID.—FACTS.—An action against the surety on an adminis-
   tration bond, to recover the amount of a decree rendered against their
   principal on his accounting, is an action at law, and, therefore, findings of
   fact in such case by the Circuit Judge, to whose decision the cause was
   submitted without a jury, cannot be considered on appeal.
3. ACCOUNT SURCHARGED AND FALSIFIED—RESTATEMENT.—An account being
   surcharged and falsified in sundry items, a restatement of the account on
   the same principles as before, supplying the items proved and omitting
   those disproved, with the necessary incidental changes in interest and
   commissions, is proper.
4. ADMINISTRATION—PURCHASE FOR DISTRIBUTEES—SURETIES.—Cotton sold
   by administrators under order of the ordinary, was bid in by the adminis-
   trators under agreement with the distributees, without notice to the surety
   on the administration bond, that the administrators should bid off this cot-
   ton, and all of the distributees would "share equally in the loss or profit

on said cotton, by holding it for a better time to sell, according to each one's interest in said estate." *Held*, that the distributees could not recover against the surety the misappropriated proceeds of the resale of this cotton, as the agreement made the cotton the property of the distributees on its purchase, and, moreover, was such an interference with the administrators' duty as wrought a discharge of the surety.

Before NORTON, J., York, April, 1890.

This was an action commenced in February, 1888, by James R. Kennedy, as probate judge for York County, against Mary L. Adickes, executrix of H. F. Adickes. The opinion states the case.

*Messrs. W. B. McCaw* and *R. W. Shand*, for appellant.

*Mr. C. E. Spencer*, contra.

September 20, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. Joseph Douglass died, in 1865, intestate, leaving as his heirs at law a widow, Narcissa, and eight children, viz.: Thomas A., Joseph, J. H., and M. A. Douglass, and daughters, Sarah J., now Campbell, M. R., now McKay, M. E., now Smith, and E. A. Douglass, now Lyles. On December 6, 1865, administration upon his estate was granted to his sons, Joseph Douglass, jr., and Thomas A. Douglass. The defendant's testator, H. F. Adickes, was surety on the administration bond then executed. Joseph Douglass, jr., made two returns of his administration, and died unmarried in 1869, leaving a will, of which Thomas A., his co-administrator, was appointed executor. Thomas A. Douglass made one return of his administration, the last one made. In August, 1881, H. F. Adickes, the surety, died testate, leaving as executrix his widow, the defendant, who qualified, and, as it is claimed, has still in her hands some undivided assets of the estate.

On November 1, 1887, Sarah J. Campbell, E. A. Lyles, M. R. McKay, M. A. Douglass, J. H. Douglass, and M. E. Smith filed a petition in York County, S. C., for an account against Thomas A.

Douglass, the surviving administrator, which was duly served on November 8th, 1887. At that time, and for years immediately before, Thomas A. Douglass and the petitioners were all residents of the State of North Carolina. On December 5, 1887, Thomas A. Douglass submitted, in the Probate Court of York County, S. C., an account of his intestate's estate, from which it appeared that there was a balance due by him to the estate of $3,709; and on that day the Probate Court rendered a decree against him for that sum, a transcript of which decree was lodged in the office of the clerk of the court, execution issued, and a return of *nulla bona* made thereon.

On February 4, 1888, this action was brought in the name of the then probate judge, to recover from the executrix of the surety Adickes the amount of the aforesaid decree of the Probate Court. The action was on the administration bond, more than twenty years after its date, in December, 1865. The defendant executrix answered, denying that there had been any breach of the administration bond, and averring, upon information and belief, that the estate of the intestate, Joseph Douglass, sr., had long since been fully settled, and that the surviving administrator, Thomas A. Douglass, was not, at the commencement of the action, and is not now, officially indebted as administrator to the said estate or the distributees thereof in any sum whatever, specifically averring against the correctness of certain items of charge in the account filed in the probate office, upon which the decree of that court was rendered. She also interposed, by way of affirmative defence, (1) the statute of limitations; (2) payment and settlement, actual and by lapse of time; and (3) *laches*.

As presented by the pleadings, the case is purely one at law upon the administration bond, to make the estate of the surety liable for the amount of the decree rendered in the Probate Court against the surviving administrator. It seems that the plaintiffs, the distributees, followed the old practice of first obtaining a decree upon account against the administrator alone, without making the surety a party, and then suing the surety in a second action at law on the administration bond—thus making it necessary for the surety either to

acquiesce in the judgment to which he was not a party, or to go before a jury and scrutinize the accounts by the awkward proceeding of *"surcharging and falsifying"* an account already stated. As I understand it, the modern practice is to implead the surety in the original action for account, which would seem to be the better practice, for the double reason that thus the whole matter is accomplished by one action instead of two, and the surety, who is certainly interested in the result, may be heard upon the subject of the accounting in the first instance. See *Taylor v. Taylor*, 2 Rich. Eq., 128, in which well considered case Chancellor Johnston said: "It is positively for the benefit of the sureties that they should be brought in, in the first instance, along with their principal, especially in a case like the present, where the principal is insolvent. He may be careless and indefinite in his defence, and, without exhibiting palpable evidences of collusion, he may, in a variety of ways, advance the interest of the adverse party. If he should fold his arms, or if he should fail to come up to the just measure of his defence, is it no privilege to the sureties to be allowed to defend themselves by supplying his deficiencies? And is it no advantage that all this may be done under the costs of one suit, instead of many?"

An order was passed, substituting the name of William H. McCorkle for J. R. Kennedy, he being then the incumbent of the office of probate judge. A trial by jury was waived, and the hearing below was by the judge, upon testimony taken by a referee under the following order of Judge Fraser: "Upon hearing the pleadings, and it appearing that, preparatory to submitting the legal issues to the jury, the account of the estate of Joseph Douglass, sr., Joseph Douglass, jr., and H. F. Adickes, should first be stated, it is ordered, that it be referred to George W. Gage, Esq., as special referee, to take and state said accounts separately, upon the basis of the issues raised by the pleadings, it being understood that as to the account of Joseph Douglass, sr., the defendant shall be confined to *surcharging and falsifying* the same as taken before the probate judge, the same as if this order had not been taken." The referee took a large amount of testimony, which is printed in the record. After striking out the items of charge in the account of the estate of Joseph

23—37

Douglass, sr., which in his judgment were not allowable, he restated the account as directed, reducing the amount seemingly due to $513.37.

Both parties excepted to this report, and the case came on for trial before Judge Norton, who, after full consideration, rendered his decision, "That the payments to each of the six children, in whose behalf alone the plaintiff could sustain an action against the surety on the administration bond (the other two children having been principals therein, and the widow being dead, and leaving no personal representatives), *exceed* the amount to which such distributees would be entitled under the principles hereinbefore announced. It is adjudged that the complaint herein be dismissed," &c. From this decision the plaintiffs appeal to this court upon various exceptions; and the defendant, executrix, gave notice of additional grounds on which the judgment herein should be sustained; all of which are long, with numerous sub-divisions, and are printed in the brief.

It will be observed that most of the plaintiffs' exceptions relate only to questions of fact, and this being a law case decided by the judge, his decision must stand as the special verdict of a jury charged with deciding the issue, whether there had been a breach of the administration bond. The circumstance that it was thought proper to have the accounts correctly stated, in order to facilitate the decision of that issue, did not have the effect of turning the case into one in chancery, but it is still an action at law. We need not, therefore, confuse this opinion by endeavoring to consider the exceptions *seriatim*, so far, at least, as they involve only facts. "Where a jury case is submitted by consent to the Circuit Judge to be decided by him, his judgment dismissing complaint is, in effect, a verdict for defendant. If, in such case, this court finds error of law in the decision of the Circuit Judge, it will declare the error, and remand the case for correction, but cannot order an original judgment for the plaintiff." *Smith* v. *Grant*, 15 S. C., 136. "In cases at law tried by a judge with the aid of a referee, the facts found on Circuit must be accepted by this court as true. The facts thus found we must take as absolute verity. This is a provision of the

Constitution itself, and is controlling." *Hendrix* v. *Harman,* 19 S. C., 485.

The only question, then, before this court is, whether the decision, considered as a special verdict for the defendant, should be set aside and a new trial ordered, for error of law committed by the trial judge. The plaintiffs insist that there were errors of law at least in two particulars, viz., in the manner of "falsifying the account," and in the construction of the paper known as the "cotton agreement." Plaintiffs' eighth exception is: "For that his honor should have held that, by the terms of the order of reference, the surety, respondent, was restricted to simply 'surcharging and falsifying' the account, as already stated in the Probate Court, the same as if the order of reference had not been passed, and that the referee exceeded the scope of his authority, and his action was *ultra vires.*" It seems the complaint is that the process of "surcharging," &c., totally excludes the idea of restating the account. On the contrary, the very order referred to directs the account to be stated as "preparatory to submitting the issues to the jury." It is said "that surcharging applies to the balance of the whole account, and supplies credits omitted, which ought to be allowed. Falsification applies to some items of the debits, supposing it to be wholly false, or in part erroneous." When items are "falsified" and go out of the account, gaps are made in it; and, as it seems to me, in order to make the account a consistent whole, it is necessary to restate the account (of course, upon proper principles), according to the new state of facts developed by the evidence. We think that the judge stated the law correctly when he said: "Leave to surcharge and falsify an account does not authorize a restatement of it on different principles; the principles of accounting are all settled, but all items of overcharge, or discharge, and of failure to credit, may be corrected. Such correction would carry with each item a change of its incidents, such as commissions and interest, and necessarily require a restatement on the principles already established." We see no error here.

The plaintiffs' first exception relates to the construction of

what is called the "cotton agreement." It seems that the intestate had on hand, at the time of his death, twelve and a half bales of lint cotton, in reference to which, the distributees, without notice to the surety, made the following arrangement with the administrators, who were also children of the intestate. The distributees executed to the administrators a penal bond, conditioned as follows: "The condition of this obligation is such, that, whereas there was a mutual understanding between all the parties above named, that said administrators were to bid off all the cotton at the sale belonging to the estate of the deceased, and that all of said parties were to share equally in the loss or profit of said cotton, by holding it for a better time to sell, according to each one's interest in said estate. Now, if said J. H. Douglass, S. J. Douglass, E. A. Douglass, M. R. Douglass, M. A. Douglass, M. E. Douglass, and Narcissa Douglass, shall well and truly abide by said agreement, and shall share according to their respective interests in said cotton, each acting separately and individually for himself or herself, the loss or profit on said cotton, whenever said administrators think best to sell the same, then this obligation to be null and void and of no effect, otherwise to be in full force and virtue," &c. (Signed and sealed by the parties.)

Under this agreement, the administrators bid off the cotton at the sale ordered by the then ordinary, and afterwards resold it at private sale, Joseph Douglass, jr., then being the active administrator. It was claimed for the estate of the surety, that the cotton was purchased by the distributees individually, and that it was error to charge it against the surviving administrator officially, so as to make the estate of the surety liable. The referee, with some hesitation, charged the cotton against the surviving administrator, but, upon exception taken, the Circuit Judge overruled him, and held "that the agreement of the distributees with the administrators to bid off the cotton, to be held and sold on joint account, all sharing the profits or losses of the venture, was a contract to change the title from the administrators to the distributees, and the circumstances show that they so understood it; for why would not a simple request to the administrators to postpone the sale have been

equally as effectual to save the administrators from a charge of neglect in not selling, &c. * * * If, however, exception to this view be sustained, then it was, at least, such an interference by the distributees with the administrators in the discharge of their duty, as released the surety from liability for any injury sustained by its non-performance in this particular," &c. We can not say that this was an error of law. The bond itself recited that it was given to secure the performance of "a mutual understanding between all the parties;" they were to share equally the profits and losses, each separately and individually for himself, and the cotton was to be sold by the administrators, whenever they thought it best to do so, indicating that it was no longer a part of the estate to be administered, but private property. "A rule never to be lost sight of in determining the liability of a surety, is that he is a favorite of the law, and has the right to stand on the strict terms of his obligation, when such terms are ascertained. This rule is universally recognized by the court, and is applicable to every variety of circumstances." *Tinsley* v. *Kirby*, 17 S. C., 4. "A surety has the right to stand upon the contract as he made it; and if altered in any respect, it is no longer the contract that he made, and he cannot be bound by it. A valid agreement between the creditor and principal debtor, extending the time of payment, is such an alteration, and will discharge the surety, even though not prejudicial to him." *Gardner* v. *Gardner*, 23 S. C., 590. And see *Rosborough* v. *McAliley*, 10 S. C., 246.

The judgment of this court is, that the judgment of the court below be affirmed.