# 10586

BELLINGER, JUDGE OF PROBATE, v. UNITED STATES
FIDELITY & GUARANTY CO.

(106 S. E. 470)

1. INSANE PERSONS—SURETY ON COMMITTEE'S BOND NOT DISCHARGED
   BY FAILURE TO REQUIRE ACCOUNTINGS.—The surety on the bond of
   the committee of a lunatic, conditioned that the committee shall
   faithfully execute his duties and yearly account to the Judge of
   Probate, is not released by the failure of the Probate Judge to re-
   quire annual returns by the committee, as it was the duty of the
   surety to see that this duty of the committee was performed.

2. INSANE PERSONS—ALLEGATION OF SURETY THAT IT WAS NOT BOUND
   BY DECREE PROPERLY STRICKEN, IF BOUND PRIMA FACIE.—In an action
   on the bond of the committee of a lunatic, an allegation of the
   surety that it was not bound by a judgment against the committee
   was properly stricken, if it was bound either conclusively or *prima
   facie*.

3. INSANE PERSONS—DECREE AGAINST COMMITTEE ONLY PRIMA FACIE
   BINDING ON SURETY.—A decree of the Probate Court, finding the
   amount due from the committee of a lunatic, on an accounting by
   him to which his surety is not a party, is only *prima facie* binding
   on the surety.

4. INSANE PERSONS—SURETY'S ANSWER, NOT STATING GROUNDS OF
   ATTACK ON SETTLEMENT, PROPERLY STRICKEN.—The surety on the
   bond of a lunatic's committee has only a limited right to impeach
   the final decree settling the accounts of the committee, and hence,
   in an action on the bond, an allegation of the surety that it was
   not bound by the decree, without stating the grounds -of its attack
   on the decree, was properly stricken.

5. INSANE PERSONS—CHILDREN OF LUNATICS ARE STRANGERS TO ESTATE.
   —Children of a lunatic petitioning for their substitution as sureties
   for the committee in order to save premiums were strangers to the
   estate, and might have been treated by the Probate Judge as inter-
   meddlers.

6. INSANE PERSONS—PROBATE COURT CANNOT RELEASE COMMITTEE'S
   SURETY ON EXECUTION OF SUBSTITUTED BOND.—The Probate Court
   has no power, either under its general power of control over the
   estates of lunatics or under Civ. Code 1912, §3613, authorizing such
   Court, on the application of sureties on administration and guard-
   ianship bonds, to make such order or decree for the relief of the
   surety as may not impair or affect the right of the parties interested,
   to discharge the surety of a lunatic's committee upon the execution
   of a substituted bond.

7. CONSTITUTIONAL LAW—PROPRIETY OF LAW DISCRIMINATING BETWEEN SURETIES OF DIFFERENT CLASSES HELD A QUESTION FOR THE LEGISLATURE.—Whether the Probate Court should be authorized to discharge sureties on administration and guardianship bonds, and not sureties on other bonds, is a question for the Legislature, and not a judicial question.

8. APPEAL AND ERROR—QUESTIONS NOT PASSED ON BELOW OR COVERED BY EXCEPTIONS NOT CONSIDERED.—Questions, argued but not passed on by the Circuit Judge, or covered by exceptions, will not be considered on appeal.

Before MOORE and MCIVER, J., Richland. fall term, 1919, and spring term, 1920.    Affirmed.

Action by G. Duncan Bellinger, Judge of Probate for Richland county, against United States Fidelity and Guaranty Co. on a surety bond.    From order striking out certain allegations in the answer, and from judgment for plaintiff, the defendant appeals.

*Robt. Moorman, Esq.,* for appellant, cites: *Duty of principal and surety*: 21 R. C. L. 1000. *Surety had right to be heard as to defaults of principal*: 22 S. C. 428; 7 S. C. 209; 7 Rich. L. *176; 1 Rich. 507; 37 S. C. 176; Bail Eq. *334; 2 Hill 313; 1 McMull *100; 5 Rich. 80; 16 S. C. 517; 74 S. C. 527; 33 S. C. 597. *Probate Court had the right to discharge the surety*: 1 Civ. Code 1912, Sec. 3360; Art. V. Sec. 9. Const. 1895. *Surety entitled to credit of commissions due Committee*: 107 S. C. 93; *and not chargeable with interest and costs*: A. & E. Enc. Law 453; 32 Cyc. 119. *No demand on surety until suit brought*. 2 McMull 71; Cases at 3 McM. L. 412; Harp. L. 31; 1 Bail. Eq. 149, *not contrary to position here.    Foundation of action is the bond itself*: 6 Rich. 355.

*Messrs. Tompkins, Barnett & McDonald,* for respondent, cite: *Statement of exceptions too general*: 100 S. C. 42; 99 S. C. 217; 51 S. C. 55; 30 S. C. 170. *Surety is limited to such defenses as the principal might make*: 21 Cyc. 245. *In absence of fraud and collusion a judgment against prin-*

*cipal on bonds of this character is conclusive against the surety*: 21 Cyc. 239; 12 R. C. L. 1164; 3 McC. L. 412; Harp. L. 31; 1 Bail. Eq. 149; 10 Wall, 583; 19 L. Ed. 1036; 43 L. R. A. (N. S.) 308 (Okla.); 11 Okla. 526; 85 Am. Dec. 125 (Cal.); 135 Ala. 517; 93 Am. St. Rep. 29; 80 Ark. 304; 160 Ill. 203; 52 Am. St. Rep. 315; 147 Ia. 294; 35 Ky. L. Rep. 473; 96 Me. 297; 90 Am. St. Rep. 349; 173 Mass. 112; 65 Mich. 602; 22 Mont. 519; 74 Am. St. Rep. 625; 152 N. Y. 498; 74 N. C. 531; 79 N. C. 372; 44 Ohio St. 637; 10 N. E. 675; 32 Ore. 506; 199 Pa. St. 40; 48 Atl. 905; 81 Tex. 396; 26 Am. St. Rep. 821; 87 N. Y. 572; 136 Mass. 297; 89 Me. 574; 129 Mich. 520. *Allegation of a conclusion of law raises no issue*: 21 R. C. L. 441. *Surety cannot now set up failure to allow commissions to its principal*: 3 Rich. 379. *Probate Court had no authority to discharge surety on bond, unless proceeding was in compliance with Sect.* 3613, 3764, 1 Civ. Code 1912; 12 R. C. L. 1164; 21 Cyc. 236; 4 Strob. Eq. 149; 2 Strob. Eq. 205; 1 Rich. Eq. 56; McMull Eq. 386; 2 Strob. Eq. 289; Ib. 205; 4 Strob. Eq. 153; 2 Strob. Eq. 292; 1 Rich. Eq. 56.

March 16, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action against the defendant as surety upon the bond of Walter J. Simons, committee of R. J. Palmer, a lunatic. The trial was before Hon. Edward McIver, presiding Judge, at spring term, 1920, without a jury, upon the pleadings and an agreed statement of facts. He rendered judgment in favor of the plaintiff for $1,105.18 May 27, 1920, from which the defendant appeals.

In 1908 R. J. Palmer was adjudged a lunatic. Walter J. Simons was appointed his committee, and on February 4, 1908, qualified by furnishing a bond to the Probate Judge in the sum of $5,000, conditioned in the usual form, with the

defendant as surety.   The committee took charge of the estate, and administered it until March 11, 1913, at which time an order was passed by the Probate Court, discharging R. J. Palmer from the custody of the Court, and requiring the committee to make a final accounting  This accounting was had, and resulted in a judgment by the Probate Court in favor of R. J. Palmer against Walter J. Simons, the committee, for $759.61, dated January 18, 1915.   The surety company was not a party to this proceeding.

Prior to this time, that is, on February 2, 1910, while the lunatic was confined in the State Hospital, three of his children petitioned the Probate Court to allow them to be substituted as sureties on the bond in the place of the defendant surety company, that the annual premium of $25 paid to the surety company might be saved to the estate.   On February 10, 1910, the Probate Judge signed an order to that effect, and that upon the execution of a new bond signed by said petitioners the defendant "be released and discharged from any and all further liability under the bond heretofore filed in this action."   The proposed bond was duly executed.

During the entire period of his incumbency the committee made no returns of the estate transactions until April 2, 1913 after the legal status of the lunatic had been restored, or purported to be, and then only an unitemized return for the five years. This return was objected to by Palmer, and on September 22, 1913, the committee filed what appears to have been duly itemized returns for five years.   Upon rendition of the judgment for $759.61 on January 18, 1915, execution was issued against Walter J. Simons, the committee, which was returned *nulla bona,* and this action followed on May 17, 1918.   The Circuit Judge charged the defendant with the amount of the Probate Court decree of January 18, 1915, plus interest and costs, amounting to $1,230.18, less five-year bond premiums, $125, and rendered judgment for $1,105.18.

The questions that arise in this appeal are as follows:

(1) Does the failure of the Probate Judge to require annual returns by the committee of a lunatic to secure the faithful performance of whose duties the bond was given to the Probate Judge discharge the surety?

(2) Is the surety upon the bond of a committee of a lunatic bound by the decree of the Probate Court ascertaining the amount due by the committee in a proceeding to which the surety was not a party?

(3) Is an order of the Probate Judge, purporting to discharge the surety of the committee of a lunatic, upon the execution of a substituted bond, effective for what purpose?

The two questions first stated above were raised in paragraphs 4 and 5 of the defendant's answer, but on motion before Judge Moore, *prior to the trial before* Judge McIver (upon a date not appearing in the "case") these paragraphs were stricken from the answer.   Question No. 3 was decided by Judge McIver against the defendant.

*The First Question.*     The condition of the bond was that—

The committee "shall and do well and faithfully execute the duties of committee and also yearly and every year account to the said Judge of Probate * * * for all such sum or sums of money * * * which he * * * may have received * * * and in other respects behave and demean himself honestly and faithfully touching said committeeship."

.One of the duties imposed upon the committee by law, and specifically undertaken by him in the bond, was to make annual returns.   The surety was bound to see that this duty was performed; he so undertook.   It would be an anomalous conclusion to release the surety from his entire obliga-

tion upon the ground that the principal had not forced the obligor to perform a specifically assumed duty for which the surety was equally bound. For his own protection it was the duty of the surety to see that this duty was performed; the Court was open to him for that purpose; it does not lie in his mouth to say that he should be discharged because the Probate Judge did not compel the performance of a duty which he himself had neglected to compel.

*The Second Question.* The Probate Judge by regular proceeding called the committee to account, took testimony, examined the itemized returns and vouchers, and arrived at the judicial conclusion that the committee was indebted to the estate in the sum of $759.61. Judgment was accordingly rendered. The surety was a party to that proceeding and now claims that it is not bound by the adjudication and claims the right to a readjustment of the committee's accounting.

It will be noted that the defendant does not attempt to assail the probate decree for want of jurisdiction, fraud, or collusion, nor does it attempt to surcharge or falsify the accounting. The allegation simply is that "it is not bound" by the decree. This is the allegation stricken out by Judge Moore's order. If the defendant is bound either conclusively or prima facie, it is clear that it can take nothing by this appeal. Judge Moore's order is not set out in the record for appeal, and we have no means of knowing whether he ruled that the surety was bound conclusively or prima facie. It matters not which, for, if it was bound in either way the defendant's allegation that it was "not bound" cannot be sustained.

It appears to the writer, and expressing his individual views of the matter, that the logical conclusion be that the surety upon a committee's bond, in an action at law upon the bond, is concluded by the decree

of the Probate Court, duly rendered upon a final settlement
and accounting by his principal, as to the amount of the
principal's liability, notwithstanding the fact that the surety
was not a party to the accounting; that such a decree is a
final judgment which may be enrolled in the Clerk's office
and upon which execution may issue; that such record es-
tablishes the committee's failure to respond to the judgment.
A breach of his bond is conclusively shown.   Certainly he
is concluded and the surety is bound to the full extent to
which his principal is bound.   He cannot attack collaterally
a decree made against the committee for whose fidelity to
his trust he has bound himself.   Stovall v. Banks, 10 Wall.
583, 19 L. Ed. 1036.   See Rose's Notes, 170, where num-
erous authorities are cited.

The remedy of the surety should be an appeal from the
decree or a direct attack upon it in the Probate Court, unless
want of jurisdiction appears upon the face of the record.

But whether or not it is due to the difference in the legal
effect of a decree of the present Probate Court and that of
the old Court of Ordinary (compare *Ordinary v. Mortimer,*
7 Rich. 176, with sections 73, 74, 75, Code of Civil Proce-
dure,) it is settled by a practically unbroken line of cases in
this State that such a decree is only *prima facie* binding up-
on the surety.   *Cureton v. Shelton,* 3 McCord, 413; *Joyner
v. Cooper,* 2 Bailey, 199; *Ordinary of Charleston District v.
Condy,* 2 Hill, 313; *Ordinary v. Carlile, McMul,* 100; *Nor-
ton v. Wallace,* 1 Rich. 507; *Davant v. Webb,* 2 Rich. 379;
*Norton v. Wallace,* 2 Rich. 460; *Taylor v. Taylor,* 2 Rich.
Eq. 123; *Stewart v. McCully,* 5 Rich. 80; *State v. Cason,* 11
S. C. 392; *Crane v. Moses,* 13 S. C. 561; *Fellers v. Davis,*
22 S. C. 425; *Kennedy v. Adicks,* 37 S. C. 176, 15 S. E.
922.

Even in these cases the right of the surety to impeach the
final decree of settlement is limited, as will appear
upon the examination, to certain objection which
must be set forth in the upleading of the surety, "in

·an action on a guardianship oṛ administration bond against a surety, errors in the decree against the principal, unless set out. by the surety in his pleadings, cannot be proved." *Davant v. Webb,* 2 Rich. 379; *Norton v. Wallace,* 1 Rich. 507.

The appellant's attorney admits in his printed argument that the Probate Court decree was at least *prima facie* evidence against the defendant. This admission, coupled with the failure to set forth in his pleadings the grounds of the attack·upon the decree of which he assumes that the defendant was deprived by the orders of Judge Moore, renders untenable the position that the defendant was not bound by the decree; he was bound presumptively, until he pleaded and established grounds of attack made legitimate under the foregoing authorities. Judge Moore's order may be sustained upon either ground; that the decree was prima facie binding upon the surety, or that the specific grounds of attack were not pleaded.

*The Third Question.* The Circuit Judge and the respondent take the position that the surety's relief is determined by the provisions of section 3613, 1 Code of Laws, and that, the course therein prescribed not having been pursued, the order is a nullity. The appellant's position is that the Probate Court, under the general powers of control over the estate of lunatics, was authorized to sign the order. We do not think that either position can be sustained.

The position for the substitution of the three adult chil-. dren of the lunatic as sureties upon the bond of the committee in the stead of the guaranty company was filed in the name of those children. They could not, except in a prospective sense, have had the slightest legal interest in the lunatic's estate. They were strangers to the estate, as much so as if they had not been related to him, and may well have been considered by the Probate·Judge as intermeddlers. But in view of the complacency and evi-

dent approval of the guaranty company in relation to the substitution, and its reliance in this proceeding upon the or- der as a release of it from all liability, we may assume that it was taken with the knowledge and consent of the guar- anty company, and will treat the matter as if the order had been taken upon the petition of the surety.

"The motion need not be made by the surety; it is suffi- cient if made with his knowledge and consent by the guard- ian." *Black v. Merritt,* 13 Ky. Law Rep. 367.

The statute (section 3613) does not provide the machin- ery for the discharge of a surety; it authorizes, after examination, the making of "such order or decree, for the relief of the petitioner, as may not impair or affect the rights of the parties interested in the estate."

The obligation of the principal, for which the surety stands bound, begins before he receives a dollar of the es- tate, for it is his duty to collect the assets; it continues through the administration of his office, and ends only after he shall have made a full and honest accounting and distri- buted the net assets to those entitled to them. It is to the interest of the beneficiaries of the estate that these obliga- tions be fulfilled, obligations of the principal and of the sure- ty. Any action, therefore, which touches these obligations necessarily "impairs," certainly "affects," that interest.

The statute is one of exceptional privilege extended to sureties upon administration bonds and (by reference, sec- tion 3764) to sureties upon guardianship bonds. All that the surety has to do is to file his petition, alleging that he conceives himself to be in danger of being injured by his suretyship, and to claim the privilege guaranteed to him as a right by this statute, whereupon it is made the duty of the Probate Judge to make a decree for his relief, limited only by the condition that the rights of the parties interested in the estate may not be impaired or affected; the surety's appre-

hension of injury, not the fact of danger, is made the test. *McKay v. Donald,* 8 Rich. 331.

. This Court, upon review of many conflicting decisions and dicta, has settled upon a construction of this statute in the case of *Hall v. Hall,* 45 S. C. at page 178, 22 S. E. at page 822, as follows:

"First.    When the surety on a guardian's bond files a petition to be discharged from liability, and the Court grants an order for such discharge, and a new bond is executed, but no new letters of guardianship are issued, the surety is liable for all the property of the ward in the hands of the guardian at the time of the discharge.    2d. Such surety * * * is not liable for the property of the ward that may come into the hands of the guardian after the surety has been discharged."

This construction adds another feature of exceptional privilege to these classes of sureties; it relieves the surety from a substantial portion of the obligation which he assumed when he signed the bond, which was intended to secure the continuing obligation of the principal until his final and legal release.    And however much the writer of this opinion may approve of the reasoning and conclusion of Chancellor Harper in the case of *Field v. Pelot,* McMul. Eq. 369, that there can be no discharge from future liabilities of the principal except by revocation of his authority, and that both sets of sureties are liable for all defalcations of the principal, both before and after discharge, the substituted sureties being primarily liable, the authority of *Hall v. Hall,* should not now be questioned; it certainly should not, however, be extended to sureties of other classes to whom this exceptional privilege has not been accorded by statute.

We apprehend that the Court of Equity with its ample powers could not grant to a  surety the relief which this statute accords to him; certainly a Court of limited power could not independently of the statute. He, therefore, who claims the benefit of a statute of exceptional privi-

lege must bring himself within the terms of that statute. We have been pointed to no statute, and have found none which accords to the sureties upon any other class of bonds than administration and guardianship bonds and the privilege of section 3613.

It may be difficult to explain why this exceptional privilege should be accorded to certain classes of sureties and not to others, practically of the same fiduciary character; there appears no reason for the distinction. That is a matter, however, that may appeal to the legislative sense of justice; it is not a judicial question.

We lay little stress upon the suggestion that the petition was filed, not by the surety, but by the children of the lunatic. If the surety had had the right to file the petition, and it was filed by others, though the application was made upon a different ground from that prescribed in the statute, we apprehend that the surety would not be deprived of the status established by a proceeding which it has evidently ratified and the benefit of which it claims in this proceeding.

It may be remarked that the order purports to discharge the surety from all liability, past as well as future. The utmost that could be claimed under this special statute would be a release from the future defalcations of the principal.   For the reasons stated we conclude that the order of the  Probate Court, purporting to discharge the surety, was a nullity.

The relative rights and liabilities of the defendant and the signers of the substituted bond have not been considered.

"The appellant has raised several questions in the printed argument which have not been considered for the reason that they are not properly before us, not having been passed upon by the Circuit Judge or covered by exceptions.

The respondent has pressed with great force the objection that the exceptions do not conform to the rules of this Court, in that they fail to point out specific errors. We have not sustained the objection from an anxiety to decide these very interesting questions upon their merits.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WATTS concurs in the result.