Nash, C. J.
 

 The bill is filed to restrain the defendants from pleading, or using at law, a release given by the plaintiff Barnes to the defendant Ward. Ward, after he married the mother of Eliza Barnes, and before his appointment as her guardian, took into his possession a negro woman, the property of his ward. This negro he sold, and the action at law is upon the guardian bond to call him to account; and he has pleaded the release in his de-fence. The equity of the plaintiffs consists in the alleged fact that the release was given without any consideration. This fact would not avail the plaintiffs at law, because the instrument, being under seal, they cannot deny, in that forum, that it was given without consideration — they are estopped to deny it. But a Court of Equity is not so restrained. They may and will look into the consideration, and if they see that it was obtained by fraud or imposition, or. by taking undue advantage of the situation of the party executing it, they will either set it aside altogether, or restrain the party holding it, from making use of it at law. The consideration mentioned in the release is five dollars ; and the defendant admits no money was paid by him, but alleges that the feme plaintiff, his ward, was indebted to him in a sum much beyond the value of the negro
 
 ;
 
 and to sustain his claim, he sets forth an account against her, amounting to the sum of $1,247. In April, 1828, the defendant Enoch Ward married the mother of Eliza Barnes, the feme plaintiff, and in August, 1835, he was regularly appointed her guardian. The account exhibited by him against her commences with his marriage, and runs down to the time of the marriage of the plaintiffs, in 1842. From 1828 to 1835, the defendant is entitled to nothing for the board and maintainance of the plaintiff, Eliza. It was at one time held, under the construe-
 
 *96
 
 lion put upon the Statute of the 43rd Eliz., ch. 2, and others on the same subject, that where a woman, having children by a former husband, marries a second time, her second husband was bound to maintain the children. 2 Bulst. 346. But this doctrine has been overruled, and it is now settled that a husband is not bound to support tire children of his wife by a former husband.
 
 Tubb
 
 v.
 
 Harrison,
 
 4 T. R. 118,
 
 Cooper
 
 v.
 
 Martin,
 
 4 East. 75, 2 Show. 955. The step-father stands, in that respect, towards his step-child as a,ny other stranger
 
 ;
 
 and if, after the child comes of age, he promises to pay for his maintainance, an action can be maintained, because the step-father was not bound in law to support him : — if he had been, the subsequent promise would have been a
 
 nudum pactum.
 
 The defendant Enoch Ward was, then, under no legal obligation to maintain the plaintiff Eliza, and she was under no legal obligation to serve him. For that portion of the account, then, preceding the appointment of the defendant as the guardian of Eliza, he had no legal claim upon her, as she was under age at the time of her marriage. The answer of Enoch Ward states that Eliza had no property except that negro woman, who was sold by him with her infant for $400, which sum was, as he states, a full price. The law of this State does not suffer a guardian, in maintaining his ward, to exceed the annual income from the ward’s property. Rev. Stat., ch, 54, sec. 22. A Court of. Equity, under peculiar circumstances — -as where the infant cannot be entitled to maintainance as a pauper, and from want of bodily health or strength, or from mental imbecility cannot be bound out as the law directs — may apply a
 
 portion
 
 of an infant’s property to his maintainance, as a matter of necessity.
 
 Long
 
 v.
 
 Norcom,
 
 2 Ire. Eq. 354. These remalles are made to show the fraudulent object of the defendant, Enoch Ward, and the oppressive use he made of the advantage he possessed, in procuring the release — considerations which could not be looked into in a Court of law. The answer states that the plaintiff, Eliza, knew she was greatly indebted to him. Doubtless his unfounded claim was not unknown to her ; and if any thing were wanting to show the intention of the defendant, it would be made manifest by the last item in the account, which is one hundred and fifty dollars for a marriage dinner, for a girl who it is stated in the answer had no
 
 *97
 
 property, and was a minor. Had the bill asked for an account, we should have ordered one ; but the plaintiffs are content to take it in the action at law, and there is no doubt it will be so taken there as to do justice to all parties, and the defendant will receive all just and legal credits, including the pig. An injunction against proceedings in another Court is an auxiliary writ to restrain parties from proceedings before the ordinary tribunals, where equitable elements are involved in the dispute. The dissolution of the injunction, upon the coming in of the answer, is a question of discretion to the Court, whether on the facts disclosed in the answer, or as it is technically termed, on the equity confessed, the injunction shall be at once dissolved, or whether it shall be continued to the hearing. Here the object of the inj unction is to restrain the defendant from pleading, or availing himself of the release executed by the plaintiff, Meredith Barnes, on the ground that it is iniquitous, without consideration, and contrary to equity and good conscience so to use it j and the defendant’s answer fully satisfies us upon all these particulars, and that the equity of the plaintiffs is sufficiently confessed. Adam’s Equity 196,
 
 Mint-urn
 
 v.
 
 Seymour,
 
 4 Johns. Ch. Rep. 497.
 

 The cause is before us for final hearing, and the injunction must be made perpetual.
 

 Pee Curiam, Decreed accordingly.