HARRY BURKE and wife v. J. M. TURNER and others.

*Appeal—Parent and Child—Guardian—Commissioners—Dis-
bursements—Attorney's Fees—Negligence—Confederate
Currency.*

1. The findings of the judge of the superior court on questions of fact properly submitted to his decision, in a cause of purely legal cognizance, are as inviolable as the verdict of a jury, and cannot be reversed on appeal.

2. A father, though he be the guardian of his minor child's estate, is not ordinarily permitted to charge for its maintenance, and, if able, he is himself bound to maintain his child; if not so, he must before applying any of his ward's income to that end, procure the sanction of the proper court.

3. A guardian is not entitled to commissions on money collected and used by him in his own business, nor on debts of his ward paid to a firm of which the guardian is a member.

4. He should be allowed reasonable attorney's fees, paid in good faith.

5. Where one who is aware of the misapplication of trust funds by a guardian afterwards succeeds to that office, he is guilty of *laches* if he fails to charge the first guardian in his settlement with him with the sum so misappropriated.

6. Even though the circumstances be such as to justify a guardian in receiving confederate currency for his ward in 1862, yet he is chargeable with its value if he neglects to invest it, uses the greater part of it in his own business, and mixes it all with his own funds.

(*Cummings* v. *Mebane*, 63 N. C., 315; *Greensboro* v. *Scott*, 84 N. C., 184; *Walker* v. *Crowder*, 2 Ired. Eq., 478; *Whitford* v. *Foy*, 65 N. C., 265; *Shipp* v. *Hettrick*, 63 N. C., 329, cited and approved.)

CIVIL ACTION on a guardian bond tried at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

The defendant J. M. Turner was appointed the guardian of the feme plaintiff in the year 1866, and the other defendants are the sureties to the bond given by him as such. Prior to such appointment, one Benjamin Turner, her father, had been her guardian and had received por-

tions of her estate. In 1866, in contemplation of a resignation of his guardianship, he applied to the county court for the appointment of commissioners to audit his accounts, which was done, and after an examination into the accounts, the commissioners made their report to the court, the same being altogether an *ex parte* settlement.

Upon his appointment the new guardian settled with his predecessor upon the basis of such *ex parte* settlement, but the plaintiffs in this action allege that there was really due her a much larger sum than was thus ascertained and accounted for, and the object of the action is to fix the new guardian with a liability on account of his negligence in not calling the former to a stricter account.

After the pleadings in the case were completed, there was a reference to a commissioner to ascertain and report as well what the defendant guardian ought to have received, as what he did actually receive of the estate of his ward. The commissioner made his report, and it was upon exceptions to that report that the case was heard in the court below, and from the rulings of the court thereon both parties appealed to this court.

In their argument counsel treated the two appeals as one, and for the sake of convenience, they are so considered.

The commissioner finds that the former guardian received for his ward prior to the war, as the proceeds of the sales of lands belonging to the estate of Garrett Pickler, deceased, a sum which, with interest to the 1st of September, 1866, that being the time of the settlement, amounted to $3,477.56. That he also received from one Adams, administrator of David Pickler, deceased, on the 19th of December, 1862, in confederate money, the sum of $3,475.60, with the scale value of which he charges him, as of that date and interest, $1,725.36, which, added to $3,477.56, makes $5,202.92.

Credit was given him (as was done in the *ex parte*
    settlement of 1866) for the board and clothing
    of his daughter and ward from 1859 to 1866,
    amounting with interest to.............................$1,024 19
For commissions on his receipts of $5,202.92,......   260 15
And on his disbursements of $1,024.19,...............   51 10

Making a total of credits............................$1,335 44
    Leaving a balance due the ward from former
      guardian,.................................................$3,867 48

As to the first item of charge—to-wit, the sum of $3,477.56—
arising from the sale of the lands of Garrett Pickler, his
Honor finds that the lands so known belonged to the mother
of the feme plaintiff who was living and covert at the time
of the sale thereof for partition, and as she died without
having converted the proceeds into personalty, leaving her
husband (the said Benjamin) surviving her, he is as tenant
by the courtesy, entitled to the use of the money during his
life, and therefore the defendant guardian is not chargeable
with the amount, and the plaintiffs appealed.

*Mr. J. M. Clement,* for plaintiffs.
*Messrs. D. M. Furches* and *Robbins & Long,* for defendants.

RUFFIN, J., after stating the case. This ruling of his
Honor was acquiesced in by the counsel who argued the
cause for the plaintiffs in this court, and we have not there-
fore at all considered the question as to what might have
been the liability of the new guardian for failing to secure
the ultimate payment of the fund. The 2nd, 3rd, 4th, 5th
and 6th exceptions of the defendants all related to this one
item, and need not therefore be again adverted to.

Most of the exceptions to the commissioner's report had
reference to the amount received from the administrator of

David Pickler in confederate money and the rulings of the court below, and those exceptions furnish the principal grounds for the appeals taken by both parties.

The facts relating to the matter, as found by his Honor, are as follows: David Pickler died in 1862, leaving the feme plaintiff as one of his heirs at law and next of kin, and the said Adams having previously been his guardian, became his administrator. On the 19th day of December, 1863, he paid to Benjamin Turner, then acting as the guardian of said plaintiff the sum of $3,475.60 in confederate money, in full of her interest in said estate.

In December, 1862, confederate money was current amongst business men, and was taken in payment of debts by prudent trustees. The said guardian made no investment of the amount received, nor did he keep it as a separate fund for his ward, and in August, 1863, he used $2,250 of the amount in hiring a substitute for himself in the confederate service. The defendant, J. M. Turner, had notice at the time of such misuse of the fund.

The first exception on the part of the plaintiff, was that the former guardian should have been charged with the whole amount of $3,475.60 received from the administrator of David Pickler in good money, and not at its scaled value, as it was negligence to have received it in a depreciated currency in December, 1862, and especially as he was prompted to receive it, by a desire to use it for his own benefit, in the employment of a substitute. His Honor finding it to be a fact that the amount was received in good faith and the exercise of ordinary prudence, and relying upon the case of *Cummings* v. *Mebane,* 63 N. C., 315, overruled this exception.

This being an action on the guardian bond, such as under the old practice would have been a pure action at law, this court has no power to pass upon the facts involved, but is as much concluded by the finding of his Honor as by the

verdict of a jury. *City of Greensboro* v. *Scott*, 84 N. C., 184.
And taking the finding to be true the exception was prop-
erly overruled.

So too with regard to the plaintiffs' second exception,
his Honor finding that the confederate money was received
in December, 1862, precludes all further enquiry into the
matter, and the scale was properly applied as of that date.
The plaintiffs' third exception was that the commissioner
erred in allowing the former guardian credit for the various
sums charged for the board and clothing of his ward—she
being his own child whom he was bound to maintain. His
Honor, upon the authority of *Walker* v. *Crowder*, 2 Ired.
Eq., 478, sustained this exception, and the defendants assign
this as one of the grounds of their appeal.

The case referred to fully sustains the ruling of the court.
A father though he be the guardian of his child is not or-
dinarily permitted to charge for its maintenance or educa-
cation. If able, he is himself bound to maintain his child,
and if not so, he must, before being permitted to apply any
portion of his ward's income to that end, procure the sanc-
tion of the proper court.

Their fourth exception was to the allowance of commis-
sions to the defendant J. M. Turner, on the ground that he
had failed to file his annual returns as guardian, and had
been negligent of the interests of his ward in the settle-
ment made with his predecessor, and even if allowed some
commissions, it was insisted that he ought not to have them
upon the sum of $1,000, which it is conceded he used of
his ward's money in his own business of manufacturing to-
bacco. This exception should have been sustained as to
the commissions on so much of his trust fund as the guar-
dian employed in his own business. Commissions are given
as compensation for the labor and care bestowed on the
management of his ward's estate, or where debts are paid
or money expended on the ward's account for the exercise

of such skill and discretion as may be needed for the protection of the ward's interest in the transaction.

Should the guardian employ the fund in purposes of his own, seeking to make profit for himself (apart from any question of fraud that may arise) there is in such case no such labor performed, or skill exerted in behalf of the ward as needs to be compensated.

For the same reason commissions should not have been allowed on the several store bills paid to the firm of J. M. and A. Turner—the guardian being a member of that firm and acting as well for himself as for his ward in the matter. As to the credit allowed for the sum of $113.00 paid to attorneys, his Honor finds that amount to have been paid in good faith, and if so, it does not seem to be excessive. *Whitford* v. *Foy,* 65 N. C., 265.

For the defendants it was excepted :

First, That the commissioner erred in going behind the settlement made by the former guardian with the commissioners appointed to audit his accounts by the county court, so as to charge the defendant guardian with a larger sum than was accounted for in that settlement—there being nothing to show that the said defendant knew, or had reason to believe, that such settlement was not fairly and honestly made.    Even if we should concede that there could be any exception made to the rule, that a guardian is liable not only for what he actually receives, but for what he ought to receive for his ward, we could not give defendants the benefit of it in this case.    The defendant J. M. Turner, as found by his Honor and as is manifestly true, had full notice of the misapplication of the ward's estate by his predecessor with reference to its use in the employment of a substitute, and having such notice it was his duty to demand, and have a strict and true account.

Second, That it was error to charge the defendant with any part of the sum of $3475.60, received by the former

guardian in confederate money, in 1862, or if with any part thereof, with more than was actually used by said former guardian in hiring the substitute.

His Honor overruled this exception upon the strength of the rule laid down by this court in the case of *Shipp* v. *Hettrick*, 63 N. C., 329, and was fully warranted in so doing. Though not liable for receiving the confederate money in 1862, the guardian Benjamin Turner rendered himself chargeable with its value, by reason of his failure to invest it, and by his subsequent use of the greater part of it, as well as by his failure to keep it as a seprate fund unmixed with other money.

There were some other exceptions filed by both parties which his Honor pronounced as too vague and indefinite to be properly understood by the court, and therefore overruled them. As they appear to us in the same light we make a like disposition of them.

The judgment of the court below is affirmed as to all matters, except as to the allowance of commissions to the defendant J. M. Turner upon the sum of $1000, of his trust fund, used in his own business, and upon the amounts paid, as store-bills to the firm of which said defendant was a member, and with reference to these two items the account of the commissioner must be corrected by the clerk of this court, to whom this cause is referred for that purpose.

PER CURIAM.                    Judgment accordingly.