13606

GULLICK, PROBATE JUDGE, *ET AL.* v. SLATEN *ET AL.*

(168 S. E., 697)

May, 1931.

*Mr. Stephen Nettles,* for appellant, American Employers' Ins. Co.,

*Messrs. Townes & Wells,* for respondent Carolina Loan & Trust Co.,

*Messrs. Blythe & Bonham,* for other respondents,

March 22, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

On June 12, 1925, Mrs. Mattie S. Clark, widow of W. A. Clark, who by a second marriage became Mrs. Mattie S. Slaten, one of the defendants in this action, was appointed by the Probate Court of Greenville County as guardian of the estate of her minor son, Joe Vance Clark, one of the plaintiffs in the cause. There immediately came into the hands of the guardian, for the benefit of her ward, the sum of $2,203.06. This amount, and other funds of Mrs. Slaten and money she borrowed, were used for the purchase of certain real estate in the City of Greenville, called the Houston Street property, and the title to the property was taken by Mrs. Slaten in her own name alone.

Being unable to obtain a personal or corporate surety on her guardianship bond, Mrs. Slaten executed in favor of the then Probate Judge of Greenville County a first mortgage on the Houston Street property to secure the payment of the sum of $2,203.06, the amount due by her, as guardian to her ward, and the mortgage was promptly recorded. The mortgage recited that it was given "in lieu of personal bondsmen," and "to indemnify said estate, and to secure it from all damage and loss by reason of any failure on my part to faithfully and well discharge all of the duties of said guardianship and conditions of my said bond."

Contemporaneously Mrs. Slaten executed to the American Bank & Trust Company a second mortgage on the Houston Street property for $3,000.00, the balance of the purchase price of the property purchased by her.

On June 25, 1927, Mrs. Slaten borrowed from Mrs. Nell M. Doster the sum of $3,500.00, and to secure the payment of that amount executed a mortgage on the Houston Street property.

The then Probate Judge of Greenville County waived, in writing, the lien of the mortgage held by the Probate Judge in favor of the mortgage of Mrs. Doster, and the instrument to that effect was duly recorded on June 30, 1927.

On October 16, 1928, Mrs. Slaten secured a loan from the defendant Carolina Loan & Trust Company, and executed to that company a mortgage over the Houston Street property to secure the payment of $4,200.00. The Doster mortgage was paid from this loan and satisfaction acknowledged on October 16, 1928, but the satisfaction was not recorded until June 27, 1929.

The mortgage to the American Bank & Trust Company was marked satisfied, and the satisfaction entered of record on October 16, 1928, by the American Loan & Investment Company, successor to the original mortgagee.

The mortgage to the Probate Judge given by Mrs. Slaten to secure her bond as guardian was marked satisfied by the Probate Judge on October 16, 1928, and, presumably, the satisfaction was entered of record on that day. The bond so secured was marked canceled, and record of the cancellation entered in the office of the Probate Judge.

On October 16, 1928, the day of the satisfaction of the mortgage held by the Probate Judge, and the cancellation of the first bond, there was filed with, and accepted by, that official a new guardianship bond on the part of Mrs. Slaten and the defendant American Employers' Insurance Company, as surety, the bond being dated October 11, 1928.

Carolina Loan & Trust Company thereafter entered suit for foreclosure of its mortgage, executed by Mrs. Slaten, and as a result of that suit the Houston Street property was sold and purchased by Carolina Loan & Trust Company, and that company obtained deed thereto from the master.

The plaintiff Joe Vance Clark, having reached his maturity, Mrs. Slaten, the guardian, filed her petition in the Probate Court of Greenville County for final accounting, settlement, and discharge. After due legal advertisement, a hearing on the application for discharge was had on April 23, 1931. The defendant, the surety company, it appears, was not notified of this hearing, and was not represented thereat. The present Probate Judge refused to grant the requested discharge, on the ground that no satisfactory accounting had been made by the guardian, and it appears held that the guardian was due to her ward the sum of $2,-203.06, the money which originally came into her hands, with interest thereon from June 12, 1925, at the legal rate. Demand for payment for the amount found to be due by the guardian was made on the defendant the surety company, but payment was refused.

The present Probate Judge of Greenville County, Mr. Gullick, and the ward, Joe Vance Clark, thereupon entered this suit against Mrs. Slaten, the guardian, and the surety company for the recovery of the amount alleged to be due the ward by the guardian. Many of the matters to which we have referred were set forth in the complaint.

In addition, it was charged in the complaint that Mrs. Slaten had violated her duties as guardian, had wasted and dissipated the estate of her ward, made unwise and unauthorized investments of the funds of the estate, dealt with the same for her own benefit, failed to sell the property purchased by her with the funds of her ward when the value of the property was sufficient to pay the indebtedness thereon and to replace the ward's funds, and, generally, that she had not properly accounted for the estate of the ward, and, accordingly, that the bond executed by Mrs. Slaten, as guardian, with the defendant surety company, as surety, had been breached.

In its answer, the defendant surety company denied liability. It alleged that the guardian had defaulted before the

execution of the bond by it, and had fraudulently induced the surety company to become surety on the bond, so as to enable her to secure cancellation of the mortgage held by the Probate Judge as security for the original guardianship bond, all of which was done for the purpose of obtaining the loan from the Carolina Loan & Trust Company; that the Probate Judge had no authority to cancel the mortgage held as security; that the investment of the guardianship money in the Houston Street property was a default, and for that reason the surety company was not liable; and that any liability rested primarily on the Houston Street property, and no liability should rest upon the surety company until after the Houston Street property had been exhausted. It was alleged, also, that the Carolina Loan & Trust Company was a proper and necessary party to the action, and should be brought in.

The surety company further alleged that Mrs. Slaten had properly expended more than $2,000.00 for the support, maintenance, and education of her minor son and ward during his minority, and that the surety company was entitled to an offset for these expenditures, as well as for the lawful commissions due to Mrs. Slaten as guardian.

The defendant Carolina Loan & Trust Company, having been made a party to the action, denied liability on any account, alleging that it had no knowledge of any claim of the Probate Judge, or of the plaintiff Joe Vance Clark, on the Houston Street property; that it should be subrogated to the rights of the mortgagees, whose mortgages had been paid with the proceeds of the loan it had made to Mrs. Slaten; that it had no knowledge of the wrongful acts of the guardian, did not know the facts of the execution of the surety bond at the time it acquired its mortgage, and denied the right of the surety company to have recovery of the amount due the ward by the guardian from the Houston Street property; that, at the time of the execution of the guardianship bond by the surety company, it had knowledge

of the intention of the Probate Judge to release and cancel the mortgage given by Mrs. Slaten to the Probate Judge, and to substitute therefor the surety bond executed by the surety company, and, by reason of such knowledge, the surety company was estopped from attacking the validity of the cancellation of the mortgage by the Probate Judge; and that the action of the Probate Judge in canceling the mortgage was the action of a Court of record, and, as such, could not be collaterally attacked.

The guardian, Mrs. Slaten, defaulted.

The case came on for trial in the Court of Common Pleas for Greenville County before his Honor, Circuit Judge M. M. Mann, and a jury.

A motion for nonsuit on the part of the defendant surety company and one for a directed verdict in its favor were refused.

The plaintiffs' motion for a directed verdict in their favor against Mrs. Slaten and the surety company was granted, presumably for the sum of $3,227.28, the amount of the principal sum received by the guardian, and the interest thereon from the time of receipt at the legal rate.

In deciding the several motions for a directed verdict, the trial Judge ruled that the issues between the surety company and the Carolina Loan & Trust Company were equitable in their nature, and he would reserve such issues for a decision by himself, as chancellor, after arguments from both sides. Pursuant to that course, after a hearing, Judge Mann filed an order allowing judgment against the surety company in the amount as stated, and denied that company any relief against the Carolina Loan & Trust Company.

The appeal here is by the surety, American Employers' Insurance Company.

The many exceptions, and the five questions which the appellant says those exceptions make, will not be stated in detail, or passed upon separately. We shall discuss what we consider the essential issues raised in the appeal, and the

determination of those only, in our opinion, will dispose of the cause in this Court.

The trouble and confusion, and the resulting litigation, have arisen because of the failure of the then Probate Judge to properly follow the law when she appointed the mother of the ward guardian of his estate, the violation of the law by the guardian, and the failure of the representative of the surety company, before the execution of the bond by that company, to properly investigate the condition of the ward's estate. It seems very difficult for the Court, though it has tried for more than a hundred years so to do, to impress upon people who deal with the estates of minors the importance and necessity of observing the laws relating to such estates. Unfortunately, many Judges of Probate, as well as fathers and mothers, think, when a father or mother has been appointed guardian of the estate of his or her child, there is nothing else to be done, and that the father or mother, as guardian, may treat the ward's property as belonging to himself or herself, and there never will be any future trouble about the matter. Too often, because of improper advice and instructions, at the solicitation of a child, for whom the father or mother acts as guardian, the estate is dissipated, the loss falling upon some surety. It may not be out of place here to gently warn Judges of Probate that they, too, may become liable upon their official bonds for failure to properly supervise the conduct of guardians appointed in their Courts.

By the provisions of Section 8612 of the Code, the Judge of Probate, upon appointing a guardian of any estate, must require such guardian to enter into proper bond for the performance of the duties of the guardian. The spirit of that section, and all the other sections on the subject of "Guardians and Wards," if not the letter of the law, contemplates proper sureties on the bond of a guardian. While a surety may very properly take from the guardian a mortgage of real estate or other security to pro-

tect himself, we cannot think that it was ever the intention of the law that a Judge of Probate could accept directly from the guardian a mortgage of real estate in lieu of a proper bond. And, certainly, the law has never intended that a Judge of Probate should accept from a guardian, as the only surety given by the guardian, a mortgage of real estate, purchased in whole or in part with money belonging to the estate of the ward.

It was a clear violation of the law on the part of the guardian, without obtaining proper order of the Court allowing her so to do, to invest the funds of the estate of her ward in real estate. It was a much more aggravated violation to invest those funds in real estate to which the guardian took title in her own name. The minute the guardian committed that act, she violated the conditions of her bond, and, upon information that she had done so, the Judge of Probate should have taken steps immediately to revoke the letters of guardianship, compelled an accounting, and have proceeded to appoint a new guardian.

While there was much irregularity as to the first bond of the guardian, we are of the opinion that the bond which she executed in favor of the Probate Judge, and the mortgage of real estate which she executed and delivered to secure the performance by her of the conditions of the bond, became, in law, a bond for the performance by the guardian of her trust. The purpose of the guardian and the Probate Judge was, undoubtedly, to carry out the terms of the statute requiring a bond on the part of the guardian. While the statutory provisions were not precisely conformed to, the variances were not intended to evade the statute, and, under the law, the papers accepted by the Probate Judge may be properly regarded as a bond of the guardian. See *Plumley v. Stewart et al.,* 165 S. C., 316, 163 S. E., 777, and authorities there cited.

The procedure followed to secure the release or the satisfaction of the real estate mortgage and the cancellation of·

the bond, for which that mortgage stood as security, was clearly not one in accordance with the terms of the statute as to relief of sureties on bonds filed with the Probate Court (see Section 8977, Code of 1932). In fact, we do not see how, under the circumstances, the provisions of that statute may have been followed in order to accomplish the desired purpose. There was really no surety on the first bond, and therefore no "surety" to be relieved. Mrs. Slaten, the principal, could not be her own surety. The real estate owned by Mrs. Slaten was certainly not "a surety" as contemplated under the law. The mentioned statute gives sureties on the bond of a guardian the right to bring a proceeding in the Probate Court for the relief of such sureties. The real estate of Mrs. Slaten could only act, of course, through her, if it could have acted at all.

It seems impossible, therefore, to treat what was done with reference to the release of the real estate mortgage as "relief" of a surety as known to the statute.

Much has been said in the arguments of both the counsel for the appellant and the respondents as to where the primary liability rested as between the surety company and the property covered by the real estate mortgage. In the discussion of that question, the real estate mortgage has been treated as the first bond, or as a surety on the first bond.

It appears for a long time there was some confusion in the decisions of this State as to the primary liability between two sets of sureties. Mr. Justice, later Chief Justice Gary, speaking on this subject, in *Hall v. Hall,* 45 S. C., 166, 22 S. E., 818, 822, said: "Much of the confusion as to the law upon this question, we think, arises from the attempts to reconcile the dicta of conflicting opinions, instead of interpreting the statute in such a manner as to accomplish the purpose for which it [the law now contained in Section 8977 of the Code as to relief of sureties] was enacted."

For the Court, Mr. Justice Gary deduced certain principles as follows: "(1) When the surety on a guardian's bond

files a petition to be discharged from liability, and the Court grants an order for such discharge, and a new bond is executed, but no new letters of guardianship are issued, the surety is liable for all the property of the ward in the hands of the guardian at the time of the discharge. (2) Such surety, however, is not liable for the property of the ward that may come into the hands of the guardian after the surety has been discharged."

It seems in the decision of the Court in the *Hall case* the principles stated by Chancellor Harper in *Field v. Pelot,* McMul. Eq. (16 S. C. Eq.), 269, were not altogether followed, although there was no reference to that particular case.

In the later case of *Smith, Probate Judge, v. Moore,* 109 S. C., 196, 95 S. E., 351, 355, Mr. Justice Gage, for the Court, apparently turned back to the holdings in *Field v. Pelot* (inadvertently referred to by him as *Pilot v. Field*), and endeavored to follow them. For some reason or other, perhaps by oversight, there was no reference in the opinion of Mr. Justice Gage in the *Smith case* to the case of *Hall v. Hall, supra.* The final conclusions reached in the *Smith case,* however, we think, were in accord with the principles announced in the *Hall case*—and, certainly, those conclusions were not inconsistent with the announcements in the *Hall case.* The main contest in the *Smith case* was between individual sureties, who first signed the bond of the guardian, and the surety company, who later signed the bond of the same guardian. The Court decided, as expressed in the language of Mr. Justice Gage, in the *Smith case,* the following: "So that the justice and the law of the case requires that both classes of surety, the individual and the surety company, shall answer the demand of the wards; but that those sureties who first signed, and whose liability was existent when Moore wasted the fund, and whose status has not been altered, shall be first liable, and the surety company shall be second liable."

The holdings declared in the *Hall case,* which we have before quoted, while questioned by Mr. Justice Cothran, were accepted by him and this Court in the later case of *Bellinger v. U. S. F. & G. Co.,* 115 S. C., 469, 106 S. E., 470. To avoid, we trust, further confusion, we think it is well for the Court at this time to announce that we will follow the conclusions of the *Hall* and *Bellinger cases,* which have been before stated.

But we are of the opinion that the cases to which we have referred, so far as the holdings contained in them which we have mentioned, are not really in point as to the main question in the case at bar. That statement must be taken in connection with certain language of Mr. Gage in the *Smith case,* to which we presently advert.

In the *Smith case,* where, as stated, the main contest was between a set of individual sureties on the one hand and a surety company on the other hand, the surety company coming in as bondsman later, there was an effort on the part of the guardian to show that his purpose in procuring the surety company's bond was to relieve the individual sureties, who had first signed for him, of further liability. The Court, through Mr. Justice Gage, on that subject, had this to say: "We think it is well established by the testimony that there was no intention between the contractors to set the surety company's bond in the place of the bond of the individual sureties. And we think the testimony proves that the only purpose of the contractors was that the bond of the surety company was to be additional to that of the individual sureties."

Evidently, if this Court had been satisfied that there was a *bona fide* agreement, whereby the surety company undertook fully to take the place of the individual sureties and to release them from liability, then this Court would have held that the surety company was primarily liable on the guardian's bond, a conclusion opposite to that which was reached, under the evidence in the case.

None of the cases, with the exception of the *Smith case,* cited by counsel, or many other cases which we have examined, hoping to obtain light on the issues involved in the case at bar, were based on facts in any way similar to the facts of this case. In most of the cases, the litigation arose on account of the release, or attempted release, of prior sureties under the provisions of the statute permitting sureties to obtain relief from bonds.

■ Following the principles stated, by implication at least, in the *Smith case,* which appear to us to be reasonable and just, we feel impelled to hold the surety company primarily responsible to the ward in this case. This for the reason, we think, under the evidence in the case, it was the intention of the surety company, through the acts and conduct of its duly authorized agent, to substitute itself as surety for the guardian in the place of the security formerly held by the Probate Judge on the guardian's bond, namely, the real estate mortgage, let that mortgage be called what it may, "bond" or "what not." A brief résumé of the evidence shows the following:

Mrs. Slaten testified that she was forced to make a new loan on the Houston Street property, and she sought to obtain the necessary money from the defendant trust company. Her counsel, who was looking after the transactions for her (not any of the counsel at present in the cause), undertook to secure the satisfaction of the mortgage in favor of the Probate Judge. This attorney testified fully as to the transactions. He said that he sought the consent of the Probate Judge to satisfy the mortgage she held, so that the loan from the trust company could be made, and that the Probate Judge agreed to satisfy the mortgage, if Mrs. Slaten would place with her proper surety bond. Upon his application to the agent of the surety company to write the necessary bond, he fully advised the agent of the purpose of Mrs. Slaten to obtain a new loan from the trust company on the first mortgage of the Houston Street property, and, to accomplish

that purpose, it was necessary for her to furnish the Probate Judge with a surety bond.

The written application for the bond, signed by Mrs. Slaten, and placed with the agent of the surety company, among other things, showed that she had given bond previously as guardian of the estate. The application required "full particulars" as to that bond, but the agent accepted the application without the "full particulars" being stated. In reply to the question, "Are you indebted to trust estate?" the applicant's answers, or the changes made by some one in her answers, were confusing. At one time, written in response to that question, was the word, "Yes," and the figures "$2,-203.00." Those words were "crossed out" on the typewriter, and the attorney for Mrs. Slaten, handling the matter, testified that the "crossing out" was made, he thought, in the office of the agent. As to the estate coming into the hands of the guardian, the application showed "Real estate; located 401 Houston St., Greenville." The application also showed that the guardian had "No cash in hand" and "No securities," but that the estate of the ward "is already invested * * * in real estate already mentioned." As to her own property, referred to in her application, Mrs. Slaten stated that she owned real estate at 401 Houston Street of the value of $8,450.00, on which there was a mortgage to the trust company in the sum of $4,200.00, leaving net to her in that property the sum of $4,250.00, and that her personal property was of the value of $2,500.00.

The Probate Judge at the time, Mrs. Scott, testified that she understood, when the surety bond was placed with her, that it "was a substitution and took the place of the mortgage," and that she so ordered and entered on the record.

The agent of the surety company seemed to remember very little about the occurrences under which the bond of his company was executed. To almost every question asked of him, he replied, "I don't remember." He failed in any instance to dispute any material testimony given by Mrs.

Slaten's attorney, who dealt with him. There was no effort on the part of the agent, as he testified, to ascertain from the Probate Judge the true condition as to the affairs of the guardian and her ward. He did not even make inquiry of the Probate Judge. He sought no information from the rec-. ords in the office of the register of mesne conveyances, where the mortgage to the Probate Judge was recorded. He must have felt assured that the statement of Mrs. Slaten that the value of the real estate owned by her, over and above the mortgage to the trust company, together with her personal property, was sufficient to save the surety company harmless.

Certainly, as between the surety company and the trust company, under the evidence of the witnesses, and the facts contained in the application for the bond, the surety company should be estopped to say that it was without sufficient knowledge or information as to the true status of the affairs of the guardian and her ward. The surety company, by placing its bond with the Probate Judge, caused that official to mark as fully satisfied the mortgage of real estate held by her. That satisfaction became a public record, and the trust company, ordinarily, had the right to rely upon it. See *Werber v. Cain,* 71 S. C., 346, 51 S. E., 123. There was absolutely no showing that the trust company, at the time it made its loan, had any knowledge or information that the guardian had already breached the conditions of her bond.

It follows that the decree of the Circuit Judge, as a chancellor in equity, on the issues between American Employers' Insurance Company, defendant, and Carolina Loan & Trust Company, defendant, must be affirmed.

In the proceeding in the Probate Court, where the guardian was required to account for the estate of her ward, the surety company was not a party. If the surety company had been a party there, perhaps it (and the guardian as well) may have appealed from the decree of the Probate Judge to

the Court of Common Pleas. *Sartor v. Fidelity & Deposit Co.,* 160 S. C.,390, 158 S. E., 819.

The action here, so far as the plaintiffs and the surety company were concerned, was one at law, and evidently was instituted under the provisions of Section 8615 of the Code, by the terms of which, after the Judge of Probate shall have pronounced a decree against a guardian, upon final account, he shall authorize proceedings against the sureties of the guardian for the collection of the amount due to the ward by the guardian.

The surety company, on pleading the matter properly, had the right to claim any proper offsets or allowances in the account of the guardian with the ward, even if the guardian had not seen fit to make such claims. See *Davant v. Webb,* 2 Rich. (31 S. C. Law), 379; *Pratt v. McJunkin,* 4 Rich. (38 S. C. Law), 5; *Sartor v. Fidelity & Deposit Co., supra.*

In the case at bar, the surety company, it appears in its answer, properly set up, among its defenses, that there should have been an allowance to the guardian for the maintenance, support, and education of the ward during the time of the ward's minority, and that the guardian also should have been allowed commissions at the rate fixed by law on the money she had received and disbursed in the trust.

In directing a verdict against the surety company, the presiding Judge held adversely to its contention as to the maintenance, support, and education of the ward, but made no reference, so far as we can find, to the matter of commissions.

Regarding the commissions, if we have understood the evidence correctly, the surety is not entitled to an offset or allowance. If we are correctly informed, and we think the record so shows, the guardian did not render to the Probate Judge the annual accounts required of her by the provisions of Section 8613 of the Code. Her failure so to do resulted, under the terms of that section, in a for-

feiture of the commissions, and neither she nor her surety may claim them. See *Andrews v. U. S. Fidelity, etc., Co.,* 154 S. C., 456, 151 S. E., 745.

·We understand that the holdings of the Circuit ■ Judge on the motions for a directed verdict were practically to the effect that the duty to support the ward rested upon the mother, Mrs. Slaten, who happened to be the guardian, and that she could not properly charge to the estate of the ward necessary expenditures for his maintenance, support, and education. Also that the surety, on that account, was not entitled to any offsets or allowances.

There is no doubt, under our law, that the duty to support a minor child ordinarily rests upon the father, even if the minor has an independent estate. It is needless to cite decisions in support of that proposition.

We have not been cited to any case in our reports, and we know of none such, which requires a mother, from her own estate, to support her minor child, if the child has an independent estate. There seems not to have been a direct holding of the Court on this particular question.

Mr. Justice McIver, speaking for the Court, in *Rhode v. Tuten,* 34 S. C., 496, 13 S. E., 676, 678, used this language:

"From this review of the authorities in this state we think it is safe to conclude that, whatever may be the rule as to the legal obligation of a mother, possessed of sufficient means for the purpose, to support her minor children, *no such obligation exists where the mother has not sufficient means of her own, but that in such case the property of the minors may be resorted to for the purpose of providing them with a proper support, at least so far as the income of their property extends; and that even. an encroachment upon the capital may be made, provided a proper application is made to the Court to allow such encroachment."* (Italics added.)

It is our view, and we so hold, when there is no authority in our State to the contrary, that a mother-guardian is not

liable for the support of her child out of her own property, where the property of the child is sufficient, in whole or part, for that purpose. We cannot see why a child, growing into years of maturity, under the nurture and care of a loving mother, should have the legal right to require that mother to support and educate it out of the mother's property, leaving its own property intact, and, perhaps, causing the loving mother in her old age to face poverty, while the child retains its resources.

This Court has often approved the principle that a father, who is charged with the legal and moral duty to support his child, who happens to be in impecunious circumstances, may resort to the estate of the child, under proper conditions, for the support, maintenance, and education of that child. See *Sartor v. Fidelity & Deposit Co., supra,* and cases therein cited.

It appears that Mrs. Slaten had little, if any, property, outside of her interest in the real estate on Houston Street, and to support herself and family she was engaged in office work for a very meager salary. The real estate, used as the home, and her little personal property, evidently brought in no income. Indeed, she was unable to pay the mortgage debt on the home, and finally lost the property. Under the evidence, her ward did some little work, and contributed somewhat to his own support. But the mother, from her own labors, aided in his support and education, and furnished him a home.

Under the law, even without an order of the Court, the mother-guardian was entitled to expend the income or interest from the funds of the ward in her hands, or, at least, proper sums thereof, toward his maintenance. See the decree of his Honor, Circuit Judge Bonham, now a member of this Court, in the case of *Gilbert v. Smith,* 132 S. C., 367, 128 S. E., 840, approved by this Court.

The mother was properly chargeable with the interest on the ward's funds, since she used them for her own benefit, but she was entitled to a counter allowance in the matter of interest for such sums as were necessary in the support, maintenance, and education of the ward, and, under the authorities to which we have referred, the surety was entitled to the benefit of the same allowances.

That our views may not be misunderstood, we think we should say that, while we do not condone the loose handling of the estate of a ward by the guardian, at the same time this Court has not looked with approval upon a parent-guardian and the ward-child using necessarily the funds of the ward's estate in the support, education, and maintenance of the child, and, upon the child reaching maturity, compelling the surety to pay again for the support, education, and maintenance of that child. To be perhaps a little plainer, the parent-guardian and the child-ward, after proper expenditures for the support, maintenance, and education of the ward have been made, should not be allowed, when the ward has reached maturity, to conspire together to place the burden of those expenditures upon the surety that the ward may gain financial advantage. The decree of Circuit Judge Sease, and the report of the referee, Hon. A. G. Kennedy, in the *Sartor case, supra,* which were approved by this Court, have expressed very fully and clearly the views of this Court generally upon this subject.

For the reasons indicated, we think the directed verdict against the surety company in favor of the plaintiffs for the full amount of the funds, principal and interest, which went into the hands of the guardian, should be reversed, and the Court should ascertain, in the proper manner, as best it can, such offsets and allowances to which the guardian and surety company are entitled, under the views we have expressed.

The judgment of this Court is that the decree of the Circuit Judge as to the issues between the American Employers' Insurance Company and Carolina Loan & Trust Company be, and the same is hereby, affirmed; but that the directed verdict in favor of the plaintiffs against the American Employers' Insurance Company be, and the same is hereby, reversed, and the cause remanded to the lower Court for a new trial as to those parties.

MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. H. TOWNSEND concur.