MARYLAND CASUALTY COMPANY v. MRS. BEULAH LAWING, INDIVID-
UALLY, AND AS GUARDIAN FOR KARL LANDER LAWING, AGNES LAN-
DER LAWING, JOHN MEANS LAWING, AND DAN PHILMON LAW-
ING, AND KARL LANDER LAWING, AGNES LANDER LAWING, JOHN
MEANS LAWING, AND DAN PHILMON LAWING.

(Filed 11 April, 1945.)

**1. Infants § 1: Guardian and Ward §§ 13, 21—**

When the court having jurisdiction of the subject matter and the
parties in a proper proceeding, after full investigation and upon sufficient
evidence, undertakes supervision of infants' estates and thereupon ad-
judges the transaction to be for the best interests of the infants, the
court's decree will be held to be conclusive.

**2. Parent and Child § 5: Guardian and Ward § 12—**

While it is the primary duty of a parent to support his child, whether
the child has an estate or not, this obligation may be qualified by the
parent's ability. And when a parent has not means sufficient to provide
necessary maintenance, he should have reasonable allowance for lawful
disbursements from the child's estate for that purpose.

**3. Guardian and Ward §§ 12, 21—**

Disbursements, made by a parent guardian prior to his appointment,
may be allowed by the court on it appearing that such disbursements
were made in good faith and would have been authorized if an applica-
tion had been made in advance.

**4. Guardian and Ward § 13—**

The employment of counsel for legal advice and assistance in connection
with the administration of the ward's estate is a proper expense to be
charged in the guardian's account, if reasonable in amount and for the
benefit of the ward. G. S., 33-42.

APPEAL by plaintiff from *Rudisill, Special Judge,* at January Term,
1945, of LINCOLN. Affirmed.

This was an action by the surety on the guardian bond of defendant,
Mrs. Beulah Lawing, for an accounting of her guardianship. It was
alleged that certain disbursements shown in her accounts had been im-
properly charged against the estate of her wards. Plaintiff sought an
adjudication thereon as affecting its contingent liability.

This case was here at Spring Term, 1943, on defendants' demurrer,
and it was decided that the plaintiff had right to maintain its action on
the facts alleged. Thereupon defendant guardian filed an amended
report, and answered pleading this as a full and correct account. The
guardian *ad litem* also answered for the infant defendants. A reference
was ordered. During the hearing before the referee it was found from
the evidence offered that a detailed accounting would be long and expen-

sive and that a wholly accurate accounting was practically impossible, and that aside from certain questions of law involving the right of the guardian to charge for expenditures for upkeep of wards' properties in the State of Florida, and the right to charge for board and laundry of wards, the difference between the amended account and the report of auditors employed by plaintiff did not aggregate a large amount. Under these circumstances at the suggestion of the referee a conference was held between plaintiff's counsel, the guardian and the guardian *ad litem* and an agreement entered into determining the balance between guardian and each ward as of 1 January, 1945, leaving open the question of guardian's liability on the controverted matters of law. Thereupon evidence was taken on the material facts upon which this agreement was based so that the court could consider said evidence on the question of approving the agreement. After considering all the evidence bearing thereon the referee and the court approved the agreement and held same binding upon the wards.

The referee found, among other things, that K. L. Lawing died intestate 17 August, 1934, leaving surviving his widow, Beulah Lawing, and four minor children; that the property which descended to these parties consisted of certain real property in Lincolnton, North Carolina, and also certain real property in Florida; that Mrs. Lawing and her children lived a portion of the time in Florida, but retained their residence in North Carolina; that Mrs. Lawing qualified as guardian of her children in Florida 19 March, 1936, and qualified as guardian of her children in North Carolina 10 February, 1937, with plaintiff Casualty Company as surety on her guardian bond. Mrs. Lawing filed reports of receipts and disbursements in connection with Florida property in the Florida court having jurisdiction and had same approved by the county judge. Mrs. Lawing filed no account of her North Carolina guardianship until 1 September, 1941. This action was instituted August, 1942, and in September, 1942, Mrs. Lawing filed an amended account correcting the former account in numerous respects referred to in the complaint. In this account she charged herself with one-third of the items for repairs and insurance on North Carolina property as well as one-third of the cost of erecting a building (she having only a dower interest therein), and credited her wards with two-thirds of the net rents received. She also charged to her wards four-fifths of the cost of repairs and upkeep of the Florida property, she having a one-fifth interest therein. Plaintiff employed expert accountants, and certain items in the account were questioned and investigated, including charges for traveling expenses between Lincolnton and Florida, and allowance to guardian for board and laundry for her wards. There were eliminated by the accountants, and consented to in the agreement above referred to, numerous items

including expenditures for furniture for the home in which wards lived, and other items which were not covered by vouchers. Excluding allowance for board and laundry, the balance due each ward as of 1 January, 1945, was stated. The referee found these balances were correct. The referee further found:

"9. That the referee finds as a fact that the balances are correct, and that in arriving at said balances all items have been eliminated which have been charged in any of the Florida accounts.

"10. That the referee finds that the amounts taken into consideration for improvement and repairs of Florida properties were actually spent by the guardian on said properties, that the expenditures were reasonably necessary to preserve the properties, and that the value of the properties were enhanced at least to the extent of the expenditures.

"11. That the referee finds that the amount allowed for traveling expenses, in arriving at the agreed balances, is reasonable and that the guardian spent at least said amounts in making necessary trips to attend to the properties and business of the wards in the two states.

"12. That the referee finds that the guardian allowed to the wards the amounts taken into consideration in the agreement for spending money, and that the amounts so allowed were reasonable.

"13. That the referee finds as a fact that Mrs. Lawing's own property, including that received from her husband's estate, and her income therefrom, was not sufficient in amount to enable her, from her own funds, to support herself and also to support her children in accordance with their station in life.

"14. The referee finds as a fact that the reasonable cost to Mrs. Lawing of furnishing board and other living expenses not taken into consideration in the specific disbursements allowed her while the wards were in the home was at least $1.00 per day for each of them, plus 50c per week for laundry . . .

"15. That the referee finds that, in view of the needs of the wards for funds for their education and the willingness of the guardian to be charged with one-third of the costs of the new building, and have only a dower interest therein, it will be beneficial to the wards to approve the agreement of the parties in that respect and the balances arrived at under the agreement have been arrived at upon said theory.

"16. That the referee finds that Mrs. Lawing's accounts have been poorly kept, but that she had not had any business experience prior to the death of her husband, and that she has acted in good faith, and has handled the estate for the best interest and advantage of her said wards. It is further found that the settlement agreed upon between the parties involves the disallowance of many items of expense claimed by Mrs. Lawing, particularly where vouchers were not available, and where

vouchers did not show for whose benefit the expenditures were made, and that it is for the best interest of the minor defendants that the settlement be approved and that the said settlement is more favorable to the minors than would likely result upon a full and complete accounting, and that the approval of said settlement will save expense which might fall, at least in part, upon the estates of the wards."

Thereupon the referee concluded that under the evidence it was within the power of the court to make allowances for expenses incurred in the support of the wards; that the action of the guardian in borrowing money to erect a building on unimproved property was beneficial to the wards and approved by the resident judge and binding on the wards that the expenditures in Florida benefited the estate of the wards, and that the guardian should be given credit therefor upon her agreement that none of these expenditures be charged in Florida; that the services of the attorney employed by the guardian in handling wards' estate up to 31 December, 1944, were reasonably worth $1,000.

Plaintiff excepted to referee's findings Nos. 13 to 16, inclusive, and to the conclusions of law consequent thereon.

The judge of the Superior Court, after considering the report of the referee and the evidence upon which it was based, approved and confirmed the same, including the agreement referred to, and from the facts thus stablished adjudicated the correct state of account between the guardian and each of her wards. Disproportion in resulting balances of the wards was due to college expenses. The court made other orders in the cause not pertinent here, and gave directions for the future administering of the trust.

The plaintiff excepted and appealed.

*Robinson & Jones and W. C. Ginter for plaintiff.*
*A. L. Quickel for defendant.*

DEVIN, J. The right of the plaintiff surety to bring this action, now, for an authoritative determination of the questions raised by the exceptions to the guardian's accounting, involving contingent liability on her bond, was upheld on the former appeal in this case, 223 N. C., 8. G. S., 28-147.

The only questions presented by the present appeal relate to the validity and effect of the adjudication below as to certain items in the guardian's account for which credit is claimed.

1. Following investigation and testimony of accountants employed by plaintiff, and in accord with the suggestion of the referee, an agreement between the plaintiff, the guardian and the guardian *ad litem* of the wards was entered into allowing the guardian credit in her account for

expenditures for improvement of wards' property in Florida, for travel expense to and from that state in connection with the business of her wards, and for a small allowance of spending money for each ward. This agreement, which also eliminated other credits originally claimed, was based on the evidence and received the approval of the presiding judge. After consideration of the evidence the court found that it was to the best interest of the wards that the agreement be approved and held that these allowances were binding on the wards.

The exception to this holding cannot be sustained. The rule is that when the court having jurisdiction of the subject matter and the parties in a proper proceeding, after full investigation and upon sufficient evidence, undertakes supervision of infants' estates and thereupon adjudges the transaction to be for the best interest of the infants, the court's decree will be held to be conclusive. *Ferrell v. Broadway,* 126 N. C., 258, 35 S. E., 467; *Rector v. Logging Co.,* 179 N. C., 59 (62), 101 S. E., 502; *In re Reynolds,* 206 N. C., 276 (288), 173 S. E., 789.

2. Plaintiff noted exception to the allowance to the guardian for board and laundry for her wards. While it is the primary duty of a parent to support his child whether the child has an estate or not this obligation may be qualified by the parent's ability. *Sanders v. Sanders,* 167 N. C., 319, 83 S. E., 490. And when the parent has not means sufficient to provide necessary maintenance he should have reasonable allowance for lawful disbursements from the child's estate for that purpose. *Mull v. Walker,* 100 N. C., 46 (50), 6 S. E., 685; *Burke v. Turner,* 85 N. C., 500; *Gullick v. Slaten,* 169 S. C., 244, 168 S. E., 697; *Sartor v. Fidelity & Deposit Co.,* 160 S. C., 390, 158 S. E., 819; *In re Rohne,* 157 Wash., 62, 39 C. J. S., 101. While in *Jordan v. Coffield,* 70 N. C., 110, it was said the obligation of a mother to support her infant children was not the same as that of the father, and that the weight of authority was against liability of the mother to this burden, the correctness of this statement was doubted by *Ruffin, J.,* in *In re Lewis,* 88 N. C., 31, and we think the applicable rule is that the allowance of a charge by a mother guardian for the maintenance of her wards would depend upon her ability to provide suitable support, under the circumstances. Here the referee found from the evidence that the guardian's property and income were not sufficient to enable her from her own funds to support herself and her children in accordance with their station in life. It may be noted that the wards' real property in North Carolina was found to be worth $100,000 and the property in Florida $60,000, and that due to interest requirements on money borrowed pursuant to order of court for the erection of a building in Lincolnton, and improvements on Florida property, the portion of income due guardian individually was materially reduced during the period in question.

CASUALTY CO. *v.* LAWING.

It is suggested, however, that this principle should not be extended to those disbursements made by the guardian prior to appointment. While there is authority for this position, *Barnes v. Ward,* 45 N. C., 93, we think the better rule is that credit may be allowed to the parent guardian for disbursements made in good faith which would have been authorized by the court if an application had been made in advance. *In re Vieweger,* 23 N. J. Eq., 527; *Hyland v. Baxter,* 98 N. Y., 610; *Gullick v. Slaten, supra;* 39 C. J. S., 279; 67 A. L. R., 1405 (note), and cases there cited. The widowed mother was the natural guardian of her infant children, and *de facto* guardian as well. Hence her disbursements from their estate, made in good faith for their benefit, prior to her legal appointment will not be disallowed for that reason. *Kelly v. Kelly,* 89 Mont., 229.

3. Plaintiff excepted to so much of the judgment as approved the referee's finding that the attorney of the guardian employed by her in connection with the administration of the guardianship be allowed $1,000 for his services extending over several years. The statute, G. S., 33-42, provides that "Every guardian may charge in his annual account all reasonable disbursements and expenses," and we think it well settled that the employment of counsel for legal advice and assistance in connection with the administration of the wards' estate is a proper expense to be charged in the guardian's account, if in reasonable amount, and for the benefit of the wards. *Burke v. Turner,* 85 N. C., 500; *Whitford v. Foy,* 65 N. C., 265; 25 Am. Jur., 63. Where the interests of the guardian and wards are antagonistic and the services rendered by the attorney are in the interest of the former rather than the latter the obligation to pay therefor is the individual liability of the guardian. *Lightner v. Boone,* 221 N. C., 78 (88), 19 S. E. (2d), 144. But here the services rendered by the attorney to the guardian in this case were expressly excluded. The referee found, and the judge approved, that the services charged were rendered in connection with the estate of the wards and that the amount allowed was a reasonable one under the circumstances.

The apportionment of costs in this case was a matter in the court's discretion.

We conclude that the findings of the referee, supported by evidence and approved by the judge, establish a sound basis for sustaining the judgment below, and it is so ordered.

Affirmed.