RHODE v. TUTEN.

1. Finding of Fact by a referee, concurred in by the Circuit Judge, supported by some testimony, and not manifestly against the weight of all the testimony, approved.

2. Use of Land in Support of Infant Heirs.—A widow, having no sufficient means of her own to support her infant children, who had no general guardian, agreed with her father that he should take to his own use for five years a small tract of land of which her intestate husband had died seised, in consideration of the support and maintenance of herself and children during that period. The father performed his part of the contract at an expense which absorbed all the profits of this land. Held, that the contract was within the power of the widow and mother to make, and that her father was not liable to herself or to her children for the rents received by him during this period.

3. Statute of Frauds.—The contract having been fully executed, the statute of frauds has no application.

Before Witherspoon, J., Hampton, June, 1889.

This case came up before the Circuit Judge on exceptions to the referee's report. His decree, after having stated the facts and disposed of some exceptions not involved in the appeal, proceeded as follows:

The fifth exception alleges error in the finding of the referee, that Mary E. Rhode did authorize her father, W. R. Tuten, to receive and apply the rent of the Altman land, as found by the referee. Mary E. Rhode denied that she made such an agreement with W. R. Tuten. The intelligent referee has had the witness before him. He is presumed to have some knowledge of the witnesses, and has found from the preponderance of the evidence that Mary E. Rhode did authorize W. R. Tuten to receive and apply the rents from the Altman land as reported by him. The fact that no demand was made upon W. R. Tuten for the

rents when the land was surrendered by him to Mary E. Rhode and her present husband in 1872, or subsequently until after the death of W. R. Tuten, February 24, 1885, tends to confirm the finding of the referee. I do not think that the finding as matter of fact by the referee, as to an agreement between Mary E. Rhode and W. R. Tuten should be disturbed, and the fifth exception is overruled.

There can be no controversy as to the fact that Wm. R. Tuten did support Mary E. Rhode and her three infant children during the period that he received rent from the Altman land. The evidence shows that the value of such maintenance would exceed Mary E. Rhode's and her infant children's respective shares of the $700 rent received by Wm. R. Tuten, independent of any services that Mary E. Rhode and her infant children may have rendered. Mary E. Rhode testified that she went to her father, Wm. R. Tuten, as a boarder. Her subsequent conduct shows that she did not regard or accept the maintenance of herself and children by Wm. R. Tuten as a gratuity. I am satisfied from the evidence, that the personal property left by James E. Altman was insufficient to maintain his widow and infant children, and agree with the referee that the rent received by Wm. R. Tuten was necessary for the support of said widow and infant children.

The plaintiff, Mary Ella Pye, was born January 24, 1863. The plaintiff, W. G. Altman, was born December 13, 1866. These plaintiffs, being minors, could not authorize Wm. R. Tuten to receive and apply their share of the rent of the Altman land. It would, however, have been lawful for Mary E. Rhode, the widow and natural guardian of said plaintiffs, to receive and apply their shares of the rent to *their necessary support and maintenance.* If Mary E. Rhode, as natural guardian, could lawfully make such application of Mary Ella Pye's and W. G. Altman's share of the rent, it seems to me that she could authorize her father, Wm. R. Tuten, to receive said plaintiff's shares of the rent to his own use, in consideration of the *necessary maintenance* of said plaintiffs. Under the pleadings or evidence, I concur with the referee in concluding that the plaintiffs are not entitled to recover judgment against the defendants.

32—34

This action was commenced in July, 1887. The plaintiff, Mary Ella Pye, attained her majority January 24, 1884. The referee concludes that there was no such express or declared trust as would prevent the application of the plea of the statute of limitations. Assuming that W. R. Tuten occupied the relation of *trustee,* I do not think that it was such a continuing trust as would prevent the application of the statute to the claim of the plaintiff, Mary E. Rhode, in 1872, when W. R. Tuten surrendered possession of the Altman land, or to the claim of the plaintiff, Mary Ella Pye, when she became of age, January 24, 1884. I do not think that the referee erred in concluding that the claims of the plaintiffs, Mary E. Rhode and Mary Ella Pye, are barred by the statute of limitations. The testimony of J. A. Rhode, that he administered upon the estate of James E. Altman in 1872, after he married the plaintiff, Mary E. Rhode, is the only evidence as to administration upon the estate of James E. Altman.

It is ordered and adjudged, that plaintiffs' exceptions to the referee's report, filed March 4, 1889, be overruled, and that said report be confirmed as the judgment in this case. It is further ordered and adjudged, that the complaint be dismissed with costs.

*Messrs. Howell, Murphy & Farrow,* for appellants.

*Mr. James W. Moore,* contra.

September 19, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. On the 10th of July, 1867, James E. Altman departed this life intestate, leaving as his heirs at law his widow, Mary E., who subsequently intermarried with J. A. Rhode, and his three children, Mary Ella, who has since intermarried with Morgan Pye, Ada E., who died intestate on the 21st of June, 1877, and William G. Altman. All of these children at the time of the death of their father were minors—Ada E. having been born on the 22nd of April, 1860, Mary Ella on the 27th of January, 1863, and William G. on the 13th of December, 1866. The intestate, James B. Altman, was at the time

of his death. seized and possessed of a tract of land in Hampton County, which descended to and vested in his heirs at law named above. The widow of the intestate, soon after the death of her husband and before her second marriage, with her minor children went to reside with her father, W. R. Tuten, where she remained, with her children, until after her second marriage with Rhode, the date of which is not specifically stated, though it seems, from the Circuit Judge's decree, to have been some time in 1872. The said W. R. Tuten went into possession of the said tract of land, and rented out the same for the years 1869, 1870, 1871, and 1872, receiving as rent for the first two years $200 for each year, and for the last two years $150 for each year. At the expiration of the year 1872, the land was surrendered to Rhode and wife at their request, and they have since been in possession. On the 24th of February, 1885, the said W. R. Tuten died, leaving a last will and testament, of which the defendants are the duly qualified executors.

On the 1st of July, 1887, this action was commenced by the plaintiffs, as heirs at law of said James E. Altman, to recover from the defendants, as executors as aforesaid, the amount alleged to have been received to the use of the plaintiffs, for the rent of said land by their testator, W. R. Tuten. The defendants answered, saying, amongst other things, that the said James E. Altman was at the time of his death indebted to their testator as well as to other parties, and that, in the year 1868, the plaintiff, Mary E., "in behalf of herself and her infant children, entered into a contract with the said William R. Tuten, by which it was agreed that in consideration of the said indebtedness of the said James E. Altman to the said William R. Tuten, and that William R. Tuten should pay the other creditors aforesaid, and in the meantime support the said Mary E. Rhode and her children (the plaintiffs), the said William R. Tuten should take the said land and rent it out for five years, and during that period receive the rents and profits to his own use." And the defendants allege that in pursuance of said agreement, the said W. R. Tuten did rent out the land for the years 1869–1872 inclusive, for the amounts above stated, and faithfully carried out his part of the said contract; but that, at the end of the said four years, the said

Mary E., having intermarried with Rhode, desired possession of the said land, and the same was surrendered to them by said W. R. Tuten, he losing the rent for the fifth year, to which he was entitled under the terms of the contract. The defendants also pleaded the statute of limitations.

The issues in the action were referred to a referee, who heard the testimony adduced and made his report, rejecting the claim of the plaintiffs, and his report, with the exceptions thereto, came before his honor, Judge Witherspoon, who rendered judgment confirming the report and that the complaint be dismissed. From this judgment plaintiffs appeal upon the several grounds set out in the record, which need not be set out here, as according to the view which we take of the case, there are really but two questions in the case : 1st. Was there such a contract as that set up in the defendants' answer ? 2nd. If so, what was its effect, so far as the rights of the minors are concerned ; for the third question, as to the statute of limitations, is superseded by the conclusion which we have reached as to the other two questions.

Whether there was such a contract as that set up in the answer is a question of fact, and, under the well settled rule, is concluded by the concurrent finding of the referee and the Circuit Judge, for there certainly was testimony tending to support the conclusion which they reached, and surely the simple denial of Mrs. Rhode would not be sufficient to warrant us in saying that the conclusion reached was contrary to the manifest weight of the testimony. Indeed, as the Circuit Judge well remarks, the fact that when the land was surrendered by the old man after his daughter's second marriage, nothing whatever, so far as the testimony discloses, was said about the rents which they knew W. R. Tuten had been receiving for the previous years, is a pregnant circumstance to show that some such arrangement about the rents had been made ; and when to this is added the fact that though William R. Tuten lived for some thirteen years afterwards, no claim was made upon him, and that this action was commenced soon after his lips were closed by death, there can be but little doubt that the conclusion reached by the referee and concurred in by the Circuit Judge was correct.

If, then, such an arrangement was made by the mother with her father for the support and maintenance of herself and her minor children, and the same was faithfully carried out by the old gentleman, as the evidence and the findings below show to have been the fact, the only remaining inquiry is, what was its effect so far as the rights of the minors are concerned? It will be observed that when Altman died, he left three children of tender years, ·the eldest being then only about seven years of age, and the youngest ''an infant in the arms,'' and the estate which he left seems from the evidence to have been small, barely sufficient to afford his family a scanty support. What, then, was the widow to do in order to provide for these children, who were then, all of them, unquestionably unable to provide for themselves? What better arrangement could she have made than that which she did make with her father, whereby she and her children were provided with a comfortable support and maintenance, without any encroachment upon the capital of the estate left by her husband and their father? Whether a widowed mother is under a *legal* obligation to support her minor children, even where her own estate is sufficient for the purpose, has not, so far as we are informed, been distinctly decided in this State, and elsewhere there is a conflict of authority. See *Fairmount, &c., Railway Company* v. *Stutler*, 54 Penn. St., 375, s. c., 95 Am. Dec., 714; Reeves Dom. Rel., ch. 9, page 350, and the authorities cited in notes, also ch. 11, page 369, and notes.

In *Kerr* v. *Butler*, 2 DeSaus., 279, where a testator gave the profits of his whole estate to his wife for life, and to his son afterwards, it was held that the mother was bound to maintain the son during his minority and until her death; but that decision was not based upon the idea that a widowed mother was under any legal obligation to maintain her minor son, but upon the construction given to the will; ''the court will not suppose on the part of the testator an intention so extraordinary as leaving his infant son for a series of years without the means of maintenance or education, or that an account for these purposes was to be kept until the son came into possession of his fortune, and then to be paid out of the capital thereof; but the court will

rather suppose the testator intended his wife to take the profits of his estate as well for the support of his son as for her own use." That case therefore does not decide that there was any legal obligation on the widowed mother to support her infant child. On the contrary, the implication is that the court did not hold to any such doctrine; for if it had, then there would have been no necessity to place the decision upon the ground of intention. In *Cudworth* v. *Thompson* (3 DeSaus., 256), it was held that minor children must be supported out of their own property where the mother has insufficient means to enable her to do so. Here the implication seems to be the reverse of what it was in the preceding case, and that the allowance made to the mother out of the estate of her minor children for their support would not have been made if the mother's estate had been sufficient.

In *Heyward* v. *Cuthbert* (4 DeSaus., 445), a mother who had only a bare competence for herself, and had minor children living with her, was granted an allowance out of their estates for their support. In *Teague* v. *Dendy* (2 McCord Ch., 207), it seems to have been conceded that minor distributees of an estate were entitled to an allowance out of the income of the estate for their support, although their mother was living and entitled to her distributive share of the estate. In *Ellerbe* v. *Ellerbe* (Speer Eq., 328), the question was as to the construction of a will of the grandfather, providing that his wife, together with his daughter and grandson, should have a reasonable and competent support out of the proceeds of his estate until his just debts were paid and during the life of his wife. It was held that as the daughter had a sufficient property of her own for the support of herself and child, though the child had none, the provision could not take effect, and the claim of the daughter to be reimbursed the expenses which she had incurred in supporting her child was rejected. Harper, Ch., in delivering the opinion of the court, plainly intimates his opinion that a mother who has sufficient means of her own to maintain her children as well as herself, is bound to do so. In *Buck* v. *Martin* (21 S. C., 590), one of the questions was whether the mother (who had married a second time) was liable to her infant children, who lived with her, for the rents and profits of the common property, and the court held

she was not. Mr. Justice McGowan, in delivering the opinion of the court, used this language: "It was not the legal duty of the mother or her (second) husband to support the children without the use of their shares. The possession of the mother was also the possession of the children living with her, and, of course, they have no just claim for rents and profits which they consumed themselves."

From this review of the authorities in this State, we think it is safe to conclude that whatever may be the rule as to the legal obligation of a mother, possessed of sufficient means for the purpose, to support her minor children, no such obligation exists where the mother has not sufficient means of her own, but that in such case the property of the minors may be resorted to for the purpose of providing them with a proper support, at least so far as the income of their property extends; and that even an encroachment upon the capital may be made, provided a proper application is made to the court to allow such encroachment.

Now, in this case the evidence shows that the property of the mother was insufficient for the support of herself and her children, and hence resort must have been had to their property for that purpose. It will be remembered that these children had no guardian, and there was no one but the mother to provide for them, and. as was said in *Connolly* ads. *Hull* (3 McCord, 9), she, as their natural guardian, was "the fittest judge" of what was necessary for them; and, as we have said, she seems to have made the best practicable arrangement for their support, without using anything but the income of their property. If the family had continued to live together on the land, they would have derived their support from the rents and profits of the land or from its cultivation, and, as was said in *Buck* v. *Martin, supra,* in such a case "the possession of the mother was also the possession of the children living with her, and, of course, they have no just claim for rents and profits which they consume themselves." But instead of doing this, she made a better arrangement with her father, whereby the children doubtless received a better support, with some education, than it was at all likely they would have received if the family had continued to occupy the land and use it for their joint support. Having thus practically enjoyed

the benefits of the rents and profits of the land, neither she nor her children can have any just claim on the estate of W. R. Tuten for the rents which he received in consideration of furnishing a support for the family, as the evidence shows that the amount of such rents was not equal to the value of the support furnished.

The question raised in the argument as to the effect of the statute of frauds upon the alleged contract, not having been raised in the court below, nor by any exception to the judgment appealed from, is not properly before us. But we may say that even if it were before us, the point raised could not avail the plaintiffs; for there is no attempt here to enforce an *executory* contract, but reliance is placed upon an *executed* contract. The provision, therefore, of the statute, that no action shall be commenced upon a contract falling within the statute of frauds, would have no application. Under the view which we have taken of the case, the question as to whether all or any of the parties are barred of their action by the statute of limitations cannot arise, and therefore need not be considered.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.