14928

LIDE v. FIDELITY & DEPOSIT CO. OF MARYLAND *ET AL.*

(4 S. E. (2d), 263)

April, 1937.

### REPORT OF SPECIAL REFEREE

This case comes before me on an order of reference passed by Honorable E. C. Dennis, Judge of the Fourth Judicial Circuit.

In the outset Mr. McInnes, one of the attorneys for the plaintiff, moved to amend Paragraph 12 of the complaint by causing the line 4 to read "in the sum of $2849.87, with interest at the legal rate from July 1, 1933," rather than as it now reads $2,149.87.

To this proposed amendment the defendants' attorneys objected on the ground, first, that it is intended to change the cause of action, and, second, that the amount between the fiduciary and beneficiary has already been adjudicated and is binding on such fiduciary and beneficiary thereof, but not upon these defendants, and third, that this is a suit on a judgment so held by the Circuit Court and affirmed by the Supreme Court.

The defendants had no previous notice of this motion and I think that at this stage of the proceedings it would not only be unjust to allow the amendment, but would change the entire cause of action and be contrary to the adjudication of the Supreme Court which is the law of this case.

This is a suit on the official bond of Julius S. McInnes, a former Judge of Probate for Darlington County, to satisfy a judgment obtained by the plaintiff against his mother, Frances Isham, on an *ex parte* accounting by Frances Isham had before the present Probate Judge of Darlington County, in which accounting judgment was ordered against Frances Isham in favor of the plaintiff for $2,149.87, dated July 1, 1935, with interest at the legal rate from that date. This judgment was transcripted by the Probate Court and filed

in the office of the Clerk of Court for Darlington County, execution issued thereon with *nulla bona* return of the sheriff, after which this action was commenced by the plaintiff against the Fidelity & Deposit Company of Maryland for the amount of this judgment, upon the ground that Julius S. McInnes, as Judge of Probate, had failed to require an adequate bond from Frances Isham, the guardian. In this suit McInnes intervened and is now a party defendant.

The records in the guardianship proceedings in the office of Probate Judge show the following facts, that on February 5, 1923, Frances Isham by her attorneys, Messrs. Spears and Want, petitioned the Judge of Probate that her son, John Frank Lide, was a minor born November —, 1910; that the said minor had no real or personal property, but as the natural child of Frank M. Lide, deceased, who served in the military force of the United States, is entitled to a monthly allowance from the United States Government in the sum of $20.00; that it was necessary that a guardian be appointed to obtain the said allowance for said minor and to apply the same for his support and maintenance.

Upon this petition, Julius S. McInnes appointed Frances Isham guardian for the minor and fixed the amount of the bond at $100.00. There was no law at that time regulating bonds in such cases and there being no estate to handle by the guardian-mother than the sum of $20.00 per month which was intended for his support and maintenance, I hold that the bond was sufficient. There was no income from the government until March 28, 1924, when she was paid the amount of $791.83 which the guardian showed in her first return filed July 25, 1924.

Frances Isham knew, or was presumed to have known, from the death of Frank M. Lide, that his son John Frank Lide was entitled to receive $20.00 per month from the United States Government for his support as provided in the Act of Congress approved June 25, 1918, 40 Stat., 609. She was a colored woman without means, with several children dependent upon her daily earnings as a washerwoman

and cook for the support of herself and family and under authority as laid down in the case of *Rhode v. Tuten,* 34 S. C., 496, 497, 13 S. E., 676, had authority to charge the plaintiff for support from that time.

In 12 R. C. L., at page 1157, it is said: "Since one of the chief objects of the guardianship is to assure the application of the ward's estate to his maintenance and education, reasonable expenditures for these purposes, or an allowance to the guardian for support furnished by himself to an amount which is reasonable in view of the ward's means, prospects and capacities, are proper credits on the guardian's account." Citing *Houseal v. Gibbes,* Bailey, Eq., 482, 23 Am. Dec., 186. "And the allowance need not invariably be confined to support furnished after the guardian's appointment, it may include a credit for previous support."

And there are other high authorities to the same effect. In 28 C. J., 119, it is said: "In the first instance the guardian is the judge of what are necessities for his ward to the same extent that a parent is with respect to his child. Such articles as are proper for the infant's condition in life, are supplied in the discretion of the guardian, subject to the supervision of the Court in passing his account." Citing *Owens v. Walker,* 2 Strob., Eq., 289, where the Court says: "There is no necessity in such case that 'the supposed indiscretion of the infant' should be under the protection of the law. The articles are supplied at the discretion of the guardian and subject to the supervision and correction of the Court in passing his accounts."

And in the case of *McRae v. David,* 5 Rich. Eq., 475, 477, the Court says: "Every public officer is presumed to have discharged his duties in a proper manner. The *onus* is upon the party alleging the contrary of this presumption, to prove his allegations. The defendant has the advantage of this presumption in the commencement of this investigation. And it would not have been sufficient for the plaintiffs to have made a doubtful case against him. The proof must be

strong enough to produce a conviction, unaccompanied with doubt, that the defendant has committed an official default."

Judge McInnes testified that he thought under the circumstances above outlined that Frances Isham, as guardian, was entitled to charge the minor with support previous to her appointment as guardian and I think that this was true in the above case where the amount of money paid to her on March 28, 1924, considerably more than a year after her appointment, all of which was payable, under the Act of Congress approved June 25, 1918, in $20.00 monthly installments from the date of the death of his father, Frank M. Lide, a little over two years before the appointment of the guardian but from the time that the law provided for the payment. The overwhelming weight of the testimony by Mr. J. A. McLeod, the present Clerk of the Court for Darlington County, and three other witnesses, goes to show that the support furnished the minor at this time by his guardian, who was his mother, was costing her more than $20.00 a month. Each of the guardian's returns up to the time that Julius S. McInnes resigned as Judge of Probate, and was succeeded by his successor, alleged that she had spent a certain amount along with other funds of her own in supporting and contributing to the minor. I, therefore, hold that the guardian was entitled to be reimbursed from the amount collected from the government on March 28, 1924, and that there was no necessity for an increase in the bond at this time.

I also find from the same testimony which was uncontradicted by any one other than the plaintiff, himself, who confessed on the stand that he and an accomplice had been convicted and served sentence for breaking into and robbing a store in Florence County and that they were shot in the act, that his support and the amount advanced to him by his mother during the succeeding months up to the last of January, 1925, when she left to accept work in Florida, was more than consumed by the minor during this time. After the guardian left here, she sent him money from time to

time amounting to a right considerable sum. When she went to Florida the last of January, 1925, she left him in charge of her furnished home for his residence during her stay there, and the uncontradicted testimony shows that a reasonable rent was $12.00 per month, after which he disposed of her furniture, her automobile and everything she had in the house, including her trunk where she kept all of her vouchers and receipts and never accounted to her for the proceeds of any part of her household effects or the automobile, which furniture alone was valued by Mr. J. A. McLeod, a merchant of many years' experience, who was familiar with her household furniture and by Mr. L. A. Yates, a man who dealt in furniture for more than twenty years and who was also familiar with her household furniture, at far more than the value of the money received by Frances Isham from the government for the minor for the two years and two months that she was in Florida previous to her discharge. I, therefore, hold that the minor has been more than compensated for all the money received by Frances Isham, as guardian for him.

Every return that was made by Frances Isham as guardian while Judge McInnes was Judge of Probate was sworn to and she stated in each return that she had spent so much along with other funds of her own in support of the minor in every case except one an amount equal to the amount collected by her.

The minor was represented in having Frances Isham discharged as guardian by Mr. Jas. C. Willcox, the United States regional attorney, whose official duties are to look after just such matters and in his petition for the appointment of Chas. E. Sligh, Judge of Probate, to succeed her as guardian he alleged again in Paragraph 3 of his petition "that said minor has no real or personal property, but as a natural child of Frank M. Lide, deceased, who was in the military forces of the United States, is entitled to a monthly allowance of twenty ($20.00) dollars," which shows that he must have come to the conclusion that there was nothing

due the minor, as any valid claim against his guardian would have been personal estate.

It seems to me, however, that there is another question which is conclusive of this case.

The only acts of negligence complained of on the part of the defendant, McInnes, were, first, that he did not require sufficient bond of the guardian when she was appointed, and, second, that he failed to require of her an additional bond in the continuation of her duties after making her first return July 28, 1924, and I shall take these up in the order stated above. In the petition for the appointment of the guardian, prepared by a highly reputable and efficient firm of attorneys at the Darlington bar, Messrs. Spears and Want, it was alleged that said minor had *no real or personal property* but is entitled to a monthly allowance from the United States Government in the sum of $20.00, that it is necessary that a guardian be appointed to obtain the said allowance for the said minor and to apply the same for his support and maintenance. From this it appeared that the minor had no estate, and I know of no law in this State at that time, providing what the bond should be in such a case. The Legislature evidently took this view, as six years later, in 1929, it passed an Act stating just what the bond should be in such cases. Therefore, it would seem, and I so hold, that the matter fixing the bond was left in the discretion of the Judge of Probate which would constitute a judicial finding on his part for which he could not be held responsible. See *Reid v. Hood and Bourdine,* 2 Nott & McC., 168, 10 Am. Dec., 582; *Brodie v. John Rutledge,* 2 Bay, 69; *McCall v. Cohen,* 16 S. C., 445, 42 Am. Rep., 641; *Abrams v. Carlisle,* 18 S. C., 242, 243; *Dunbar v. Fant,* 170 S. C., 414, 170 S. E., 460, 90 A. L. R., 1412, and many other cases. Next we come to the second proposition. Is there any law requiring a Judge of Probate to increase a bond after it has once been given? Certainly he has no power to compel compliance with such requirement. In 23 C. J., 1078, § 213, it is said:

"Statutes frequently provide for requiring new bonds or additional security to be furnished by the executor or administrator in certain cases where the interest of the estate requires it, and especially where some new situation arises, as an increase of assets or the insufficiency of one or both sureties since qualification; and even after executor has been qualified without bond, if some change in the situation or circumstances of the executor or his conduct of the trust appears to render this a prudent measure, the Court may in its discretion subsequently require a bond to be given. New bonds may also be permitted by substitution upon due procedure for the prospective relief of those already bound. * * *

"The Court cannot compel an executor or administrator to furnish new or additional security. Its power extends only to directing him to do so, leaving him the option to comply with such requirement or to be deprived of his office by reason of noncompliance."

And in Paragraph 214 of the same work, at page 1079, it is said: "The necessity for new or additional security is a matter resting in the discretion of the Court and the exercise of such discretion should not be disturbed except in case of abuse."

And in our own case of *Williams v. Weeks,* 70 S. C. 1, at page 4, 48 S. E., 619, 620, a case strongly relied on by counsel for both sides, it is said: " * * * But be that as it may, the court of probate is, under the Constitution and the statutes quoted, not an inferior court, but a court of independent and general jurisdiction of certain special subjects, among which are matters appertaining to the estates of minors and the duties imposed by law upon their guardians. It was therefore clearly within the jurisdiction and duty of the probate judge, when jeopardy of the minors' estate was brought to his attention, to inquire into the sufficiency of the bond, and, *if necessary, to require a new one of adequate amount, with sufficient sureties.* * * * " (Italics mine.)

The Court does not say that it is his duty to require new bond in any given case, but that it was within his jurisdiction and duty to inquire into, and if necessary to require a new bond. The Court goes on further in the following language: " * * * The probate judge being an officer charged with both judicial and ministeral duties, it is often quite difficult to say whether in a particular instance he is acting judicially, and is liable only for corrupt action, or ministerially, and liable for a failure to perform his duty with discretion and care. If we assume in this instance, however, that he acted in his judicial capacity in holding after inquiry a new bond to be necessary, when he had reached that conclusion his action in taking the new bond was ministerial. In that view the case would be just as if the circuit court had ordered a trustee to give a new bond, to be approved by the clerk of court. The order that the bond be given would be a judicial act, but the clerk's act in taking it and approving the sureties would be ministerial. * * * "

Just as in this case if Judge McInnes had ordered a new bond of sufficient amount or if he failed to order a new bond as was the case. He evidently found that such was not necessary, and his act was judicial, as stated by the Court in the case just cited. However, in the case of *Williams v. Weeks, supra,* the administrators of the estate in which the minors were interested subsequently represented to T. S. Weeks, Probate Judge, that the guardian had received about $500.00 and was about to receive $351.78 more, and for this reason they petitioned that the guardian be required to strengthen his bond or to give a new one sufficient to protect his ward's estate. After this petition was filed it did not appear in the record that any new bond was ordered, but it did appear that the Probate Judge took a new bond for the proper amount in which the sureties were absolutely worthless. This the Court held was evidence that a new bond had been ordered and being undisputed by the defendants was conclusive of this fact, and the Court further held that

that taking of the bond was a ministerial duty on the part of the Probate Judge and the sureties being notoriously insolvent showed negligence on his part in taking the bond, for which he was held responsible. In the present case there is no claim or pretense that the sureties on the bond given were not entirely sufficient, both at the time that the bond was given and at the present time. From the authorities above cited I cannot escape the conculsion that the act of the defendant, Julius S. McInnes, in fixing the bond originally and in failing to require an increase were judicial acts on his part, for which neither he nor his bondsman, The Fidelity & Deposit Company of Maryland, could be held responsible, and I so hold.

In addition to all of this, Frances Isham, as the mother of John Frank Lide with whom he lived, was entitled to his earnings unless there has been an expressed or implied relinquishment of such right. See 46 C. J., 1281, Sections 79 and 80, and *Volentine v. Bladen,* Harp. Law, at page 9, where it is held: "A mother is entitled to recover, on a written contract made with her for the purpose, wages due for the labor of her infant son."

And this as I understand has long been the law of this State.

There has been a great deal said about the failure of the guardian to produce vouchers for the money spent for the minor. This is accounted for at page 19 of her testimony taken *de bene esse* where she said that all letters and receipts were kept in a trunk at her home which was disposed of by John Frank Lide and in many other places in her testimony this fact is testified to.

The plaintiff's attorneys have prepared, and given me the advantage of, a painstaking brief of very considerable research, and have with commendable zeal presented their client's cause; but the facts of the case do not appear to me as a Master in equity, while the settled rules I think are contrary to their contentions. Accordingly, and for the reasons stated, I recommend that the complaint be dismissed.

## DECREE OF JUDGE DENNIS

This case was, upon motion of J. D. McInnes, B. W. Hyman, and L. M. Lawson, attorneys for plaintiff, with the consent of J. R. Coggeshall and S. S. Tison, attorneys for the defendants, referred to S. C. Chapman, Master of Chesterfield County, as Special Referee, to take the testimony and report his conclusions of both law and fact with leave to report any special matter.

John Frank Lide, who was the natural son of Frank M. Lide, who was in the military forces of the United States, became entitled after his death to certain monies from the veterans' administration and Frances Isham, his mother, was appointed his guardian by Julius S. McInnes, the then Judge of Probate for Darlington County, to serve as such until discharge, on account of absence from the State, by Chas. E. Sligh, the successor to Julius S. McInnes, as Probate Judge. Later the said Chas. E. Sligh was appointed guardian of John Frank Lide by the Court of Common Pleas and has never been discharged as such. While still guardian of John Frank Lide and upon his petition, Frances Isham was ordered by Chas. E. Sligh, Probate Judge, to make an accounting before him for her actings and doings as such guardian.

Neither of the defendants were parties to this proceeding, but both John Frank Lide and his mother, Frances Isham, waived any objection that they might have to Chas. E. Sligh hearing the cause by reason of his being guardian and on account of any interest that he may have in said cause. On the accounting Chas E. Sligh found that the said Frances Isham was indebted to the said John Frank Lide in the sum of $2,849.87 which was reduced on appeal by $700.00 or to $2,149.87 and the judgment as fixed on appeal was filed in the Probate Court for Darlington County and transcribed to the office of the Clerk of Court for Darlington County and this suit commenced for that amount against the defendant, The Fidelity & Deposit Company of Maryland as

bondsman for Julius S. McInnes, Judge of Probate. Upon motion of Mr. McInnes he was made a party defendant to the cause as he was primarily responsible for any judgment that may be recovered against his bondsman.

This case was tried before Honorable J. Henry Johnson, presiding Judge, and a jury, and resulted in a mistrial.

Thereafter the defendants moved before me, at chambers, to have the judgment against Frances Isham set aside in so far as it affected the defendants, upon the ground that Judge Sligh was at the time of rendering the judgment the guardian of the plaintiff, John Frank Lide, and upon the further ground that the said Frances Isham had been charged as guardian, with many items that had been collected after she had been discharged and while Chas. E. Sligh was the guardian of the plaintiff, John Frank Lide. Upon this motion I held: "I am convinced that the judgment against Frances Isham is binding upon her and the petitioner, John Frank Lide, solely for reason that they waived the disqualification of the Judge of Probate to act in the accounting held before him when he was disqualified by reason of interest in the result of the cause, but I am equally convinced that he was utterly without jurisdiction to make any ruling or finding which could in the remotest way affect the interest of any party or parties who had not joined in the waiver."

And ordered further: "That the said judgment be set aside in so far as it affects in any way the rights of the defendants, The Fidelity & Deposit Company of Maryland and Julius S. McInnes."

And this order was affirmed in every particular on appeal to the Supreme Court.

This cause comes before me on exceptions to the Special Referee's report. I have read carefully the testimony, the exceptions to the Special Referee's report, and after hearing argument of counsel for both sides, I am convinced that the findings and conclusions of the Special Referee are correct.

I also find and hold that all of the acts and rulings of Julius S. McInnes, as Probate Judge, complained of, were judicial and not ministerial findings for which neither he nor his bondsman can be held responsible.

It is therefore ordered, adjudged and decreed that all of the exceptions to the Special Referee's report be overruled and his report be adopted as the judgment of this Court.

*Messrs. J. D. McInnes, B. W. Hyman* and *L. M. Lawson,* for appellant,

*Messrs. Jas R. Coggeshall* and *Tison & Miller,* for respondents,

July 31, 1939.

The opinion of the Court was delivered by Mr. Wm. H. Grimball, Acting Associate Justice.

This is an appeal from an order of Honorable E. C. Dennis, Judge of the Fourth Judicial Circuit by which order he overruled exceptions to the report of Honorable Sherwood C. Chapman, Special Referee herein.

After due consideration of the exceptions to the order of the Circuit Judge, we find his conclusions satisfactory to this Court. It is hereby affirmed.

Let the order of his Honor, Circuit Judge Dennis, be reported, and also the report of the Special Referee herein.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.